**ALASKA CONSUMER ADVOCACY PROGRAM, Appellant,**

v.

**ALASKA PUBLIC UTILITIES COMMISSION and Alascom, Inc., Appellees.**

**ALASCOM, INC., Cross–Appellant,**

v.

**ALASKA PUBLIC UTILITIES COMMISSION and Alaska Consumer Advocacy Program, Cross–Appellees.**

**Nos. S–3172; S–3173.**

Supreme Court of Alaska.

June 1, 1990.

Joel A. Rothberg, Anchorage, for appellant and cross-appellee Alaska Consumer Advocacy Program.

Julian L. Mason and A. William Saupe, Ashburn & Mason, Anchorage, and Elisabeth H. Ross, Birch, Horton, Bittner & Cherot, Washington, D.C., for appellee and cross-appellant Alascom.

Glenn M. Gustafson, Asst. Atty. Gen., Anchorage, and Douglas B. Bailey, Atty. Gen., Juneau, for appellee and cross-appellee Alaska Public Utilities Com'n.

Before RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

As a result of unforeseen growth in Alaska interstate telephone usage, an interstate revenue settlement agreement between Alascom and AT & T provided substantially more income to Alascom than anticipated. In subsequent intrastate rate making proceedings before the Alaska Public Utilities Commission ("APUC"), Alascom argued that it was entitled to this excess while the APUC staff and the Alaska Consumer Advocacy Program ("ACAP") argued that Alascom should be required to use the excess to reduce intrastate rates. APUC adopted an intermediate position by choosing to treat the excess as cost-free capital. In a concurrent rate design proceeding, APUC also allowed Alascom to initiate service charges for operator-assisted calls.

ACAP appealed APUC's treatment of the excess and Alascom cross-appealed. The superior court, Judge David C. Stewart, affirmed APUC's treatment of the excess. ACAP appealed and Alascom cross-appealed.

ACAP also appealed APUC's decision to allow operator service charges. The superior court, Judge William H. Fuld, dismissed this challenge without prejudice on the ground that it was not ripe for review. ACAP appealed.

We reverse the superior court decision affirming APUC's treatment of the excess on the ground that APUC had no jurisdiction over the interstate settlement revenues. We reverse the superior court decision dismissing ACAP's challenges as not yet ripe, but note that these challenges are now moot.

### I.

Rates for telephone calls between Alaska and the contiguous United States historically have been higher than rates for interstate calls of similar distance between points in the contiguous states. Not only were the costs of providing interstate service to Alaska relatively high, but high interstate rates partially subsidized the high cost of providing intrastate telephone service within Alaska. In the contiguous states, telephone companies separated their costs and revenues between interstate and intrastate jurisdictions according to a set of rules known as the "Ozark Plan," which is contained in the FCC Separations Manual. AT & T reimbursed local telephone companies for the costs they incurred in originating and completing interstate calls. Because the Ozark Plan was not applicable to Alaska, Alascom historically negotiated a reimbursement of its interstate costs by

AT & T, receiving approximately eighty percent of the revenues from interstate calls to or from Alaska.

In 1972, the FCC concluded that the use of satellite technology could reduce the cost of providing long distance service to Alaska substantially. Second Report and Order, 35 F.C.C.2d 844, 845, 856–57 (1972). The FCC conditioned approval of satellite use on "rate integration," the reduction of rates for calls to and from Alaska to levels comparable to those for interstate calls within the contiguous states. See 35 F.C. C.2d at 856. The first two of three steps toward full rate integration occurred in 1976 and 1977. Rates for calls to and from Alaska were lowered and Alascom received progressively larger proportions of the revenues from these calls so that Alascom's revenue flow remained constant.

In 1977, the FCC was concerned that AT & T's payment to Alascom of substantially all revenues from interstate calls to and from Alaska caused ratepayers in the contiguous states unduly to subsidize interstate phone service to Alaska. Memorandum Opinion and Order, 72 F.C.C.2d 672, 674 (1978); see Notice of Inquiry, Proposed Rulemaking and Creation of Federal–State Joint Board, 64 F.C.C.2d 1033, 1033–34 (1977). The FCC began proceedings to establish separations procedures for Alaska and thereby fairly allocate interstate revenues between AT & T and Alascom. 64 F.C.C.2d at 1033. The FCC convened a Federal–State Joint Board to recommend separations procedures for Alaska. Id.

In the proceedings before the Joint Board, Alascom argued that the application of the Ozark Plan without modification would cause revenue shortfalls and necessitate intrastate rate increases. However, the FCC was initially inclined to apply the Ozark Plan everywhere, 64 F.C.C.2d at 1034, and it informally told Alascom that it would not accept modification of the Ozark Plan. Alascom began to negotiate a settlement with AT & T. In 1980, they executed an agreement providing that each would (1) urge the FCC to apply the Ozark Plan in Alaska, (2) urge the FCC to delay full rate integration until 1985, and (3) seek FCC approval of the payment through 1984 of a "transitional supplement" by AT & T to Alascom in addition to cost-based payments computed according to the Ozark Plan. AT & T and Alascom both expected that the transitional supplement payments would total about $88 million. They also expected that this would approximate the amount of revenue received by AT & T from the postponement of rate integration and the amount of Alascom's intrastate revenue deficiency. In 1981, the Joint Board recommended approval of the agreement, Memorandum Opinion and Order, 87 F.C.C.2d 20, 24 (1981), and the FCC concurred. Memorandum Opinion and Order, 87 F.C.C.2d 25 (1981). In 1984, the FCC postponed full rate integration and ordered continued transitional supplement payments until the end of 1986.

The growth of the Alaska economy during the transition period was accompanied by a dramatic and unexpected increase in calling to and from Alaska. Alascom received over $165 million in transitional supplement payments between 1980 and 1985. After taxes, Alascom netted approximately $84 million. Its intrastate revenue deficiency during this period was only about $29 million. It thus received about $55 million more than necessary to offset its intrastate revenue deficiency.

In 1984, Alascom filed a request for an intrastate rate increase with APUC. In the subsequent proceedings before APUC, the APUC staff and ACAP argued that Alascom and AT & T intended that the transitional supplement be used for intrastate rate reduction and that the FCC believed this was the purpose of the transitional supplement. They suggested that the amount of the transitional supplement in excess of Alascom's intrastate revenue deficiency should be applied as a reduction of Alascom's cost of service for some period of years. The effect of this would be to lower intrastate rates. Alascom argued that the transitional supplement was not intended solely to·offset intrastate rates. Alascom argued that the supplement was intended to allow Alascom to maintain intrastate rates at a constant level and to build a state-of-the-art communication sys-

tem covering all of Alaska. These purposes were achieved. Alascom asserted that it should be permitted to retain the money for its own purposes, and raised several legal objections to the staff's approach.

In 1986, APUC issued Order 32. The challenged part of that order concluded that Alascom, AT & T, and the FCC intended that the transitional supplement be used for public purposes. One public purpose for the supplement was holding intrastate rates constant while Alascom expanded its network to reach Bush communities. APUC found no intention to use the supplement to reduce intrastate rates dollar-for-dollar. APUC chose to treat Alascom's transitional supplement revenues in excess of its past intrastate revenue deficiency as cost-free capital. APUC reaffirmed this part of Order 32 in Order 35.

In 1987, APUC issued Order 37 finding, consistent with Order 35, that Alascom had a current intrastate revenue deficiency of about $5 million. Order 37 also opened a docket to consider Alascom's rate design. As part of redesigning Alascom's rate structure, APUC allowed Alascom to collect its intrastate revenue deficiency by initiating charges for operator assistance with intrastate calls at a level comparable to charges for assistance with interstate calls. To allow Alascom to recover no more than its intrastate revenue deficiency, APUC cut Alascom's intrastate rates for certain unassisted calls.

ACAP appealed Order 35 to the superior court alleging that APUC was required to use the excess transitional supplement for dollar-for-dollar intrastate rate reduction. Alascom cross-appealed raising various legal challenges to the APUC order including that APUC lacked jurisdiction over the transitional supplement revenues. Alascom asked the superior court to defer consideration of its cross-appeal with the understanding that it would withdraw the cross-appeal if the court rejected ACAP's allegations of error in the principal appeal.

ACAP also appealed Order 37 alleging that APUC should have applied the excess transitional supplement to intrastate rates

and found an intrastate revenue surplus of about $60 million. ACAP's points numbered two through five in this second appeal raised various procedural challenges to APUC's adoption of operator assistance charges and simultaneous reduction of intrastate rates. The superior court consolidated these appeals.

The superior court dismissed ACAP's points two through five without prejudice on ripeness grounds. The court observed that "there is an ongoing rate design proceeding and the points raised have or may be resolved in that proceeding." The superior court affirmed APUC's treatment of the excess transitional supplement over ACAP's allegations of error.

ACAP appealed both of the superior court's decisions to this court, and Alascom cross-appealed. We granted Alascom's unopposed motion to defer consideration of the issues raised in its cross-appeal and heard oral argument on ACAP's appeal. We then vacated in part our stay of Alascom's cross-appeal and asked the parties to file memoranda addressing (1) APUC jurisdiction over the transitional supplement revenues and (2) the possible mootness of ACAP's appeal of the superior court's dismissal of its points two through five in light of subsequent developments in the redesign of Alascom's rate structure.

## II.

The transitional supplement was created by an agreement between Alascom and AT & T that was approved by the FCC. The agreement, FCC orders, and other facts all suggest that the transitional supplement constitutes interstate revenue.

The agreement provides that the transitional supplement is part of an "interim settlement arrangement" between AT & T and Alascom. The FCC describes the agreement as providing a set of "interim settlement procedures" which constitute "a method of jurisdictional separations." 87 F.C.C.2d at 27–28. A settlement arrangement between Alascom and AT & T only could concern revenue derived from interstate calls since Alascom's telephone net-

work is connected to AT & T's only for the purpose of carrying interstate calls. The agreement was a settlement in an FCC proceeding concerning interstate rate integration.

■ The facts compel a finding that the transitional supplement is interstate revenue. The amount of the transitional supplement was determined by the amount customers paid for interstate calls to and from Alaska. AT & T paid the supplement out of its interstate revenues and the APUC staff accounting expert testified that the supplement was properly considered interstate revenue on Alascom's books. We observe that the Hawaiian Public Utilities Commission treated a similar supplement paid to the Hawaiian Telephone Company as interstate revenue and this result was not questioned by the Ninth Circuit when it considered a dispute concerning that supplement in *Hawaiian Telephone Co. v. Public Utilities Commission,* 827 F.2d 1264 (9th Cir.1987).

Because the transitional supplement was interstate revenue, APUC had no authority to consider the supplement in setting intrastate rates. *United States v. RCA Alaska Communications, Inc.,* 597 P.2d 489, 499 (Alaska 1978); *see also Hawaiian Telephone,* 827 F.2d at 1274–76 (use of state separations procedures assigning to intrastate jurisdiction revenues that would be interstate revenues under the Ozark Plan is impermissible). We thus reverse the decision of the superior court affirming APUC's order. Subsequent intrastate ratemaking proceedings must not consider the excess transitional supplement.[1]

### III.

ACAP also appealed on procedural grounds the provisions of Order 37 allowing inception rates for operator services. The superior court dismissed these claims, points two through five of ACAP's appeal, on the ground that the points raised were not ripe since they may be resolved in subsequent agency proceedings. ACAP argues that Order 37 is a final order from which it may appeal even though it is a preliminary order issued in ongoing rate design proceedings.

■ The parties view this challenge too broadly. Points two through five are a procedural challenge to Order 37. The order clearly is final and appealable because it is fully effective and has practical consequences. The purpose of the ripeness doctrine is to prevent courts from "entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). There can be no doubt that Order 37's effects are felt by Alaska consumers; they pay operator assistance charges because of it. Since the challenges are procedural and not substantive challenges to the design of the rate, these challenges were as ripe for review on the day the order was entered as they will ever be. Subsequent notice and production of evidence in ongoing proceedings could not possibly remedy procedural defects in the promulgation of Order 37. We thus reverse the superior court's order dismissing these points.

■ However, because APUC's order of November 17, 1989 replaced the interim rate design with a permanent rate design, a procedural challenge to the interim rates is now moot. APUC orders are appealable to the superior court under the terms of the Administrative Procedure Act ("APA"). AS 42.05.551. The APA provides that the outcome of such an appeal is a "judgment setting aside, modifying, remanding, or affirming the order...." AS 44.62.570(e). There is no provision for money damages. While the reversal of an invalid ratemaking

---

1. ACAP argues that APUC erred in finding a revenue deficiency in Order 37 when it should have applied the excess transitional supplement to the revenue deficiency and found a revenue surplus. Because APUC had no jurisdiction over the transitional supplement, we reject this contention. The remainder of ACAP's challenges to APUC's treatment of the transitional supplement are similarly moot.

order properly may lead to the refund of increased rates collected pursuant to the invalid order as the cases cited by ACAP suggest, the present case arose out of a revenue-neutral rate design proceeding. This is significant because when operator assistance charges were instituted, intrastate telephone rates were reduced. Thus, Alascom received no additional revenue from the challenged operator assistance charges above its intrastate revenue deficiency. Ordering a refund of operator assistance charges would leave Alascom in a worse position than if the order had never been promulgated. The only possible remedy in this action would be a declaration that Order 37 was invalid. Since the rate design prescribed by the order is no longer in force, the appeal is moot. To prevent or at least minimize the injury that allegedly resulted from the interim rate design, ACAP should have sought a stay of the order or a preliminary injunction. The superior court is directed to enter an order dismissing ACAP's points as moot.

The decisions of the superior court are REVERSED and the case is REMANDED for further proceedings consistent with this opinion. The remainder of the issues in Alascom's deferred cross-appeals in both the superior court and this court have not been decided by the superior court. We thus dismiss its cross-appeal pending before this court.

MATTHEWS, C.J., not participating.