Edward N. KROHN, Appellant,

v.

STATE of Alaska, DEPARTMENT OF FISH AND GAME, Commissioner Carl Rosier, Appellees.

No. S–7343.

Supreme Court of Alaska.

May 30, 1997.

Arthur S. Robinson, Robinson, Beiswenger & Ehrhardt, Soldotna, for Appellant.

Bonnie M. Harris, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS and EASTAUGH, JJ.

*OPINION*

EASTAUGH, Justice.

I. *INTRODUCTION*

Edward Krohn challenges the validity of emergency and permanent subsistence regulations adopted in 1994 by the Board of Fisheries, the Board of Game, and the Commissioner of the Department of Fish and Game. The superior court dismissed his

claims on summary judgment. Because the issues Krohn would raise are moot, we affirm.

## II. FACTS AND PROCEEDINGS

In 1992 the Alaska legislature enacted a new subsistence law, AS 16.05.258, directing the Boards of Fisheries and Game (Boards) to designate nonsubsistence areas, i.e., areas in which subsistence hunting and fishing would not be given any priority over other uses. The Boards designated five such areas. The constitutionality of AS 16.05.258 was challenged in *Kenaitze Indian Tribe v. State of Alaska*, No. 3AN–91–4569 CI. The superior court held the "nonsubsistence areas" aspect of AS 16.05.258 to be unconstitutional, granted summary judgment to the Kenaitze plaintiffs in that action, and on November 26, 1993, remanded to the Boards to adopt subsistence regulations. The State appealed to this court, and unsuccessfully moved the superior court for a stay of judgment pending appeal. On February 11, 1994, the State moved this court for a stay of judgment pending appeal. A single justice granted the stay on March 8. The full court vacated that stay on April 11.

On April 14 the Joint Board of Fisheries and Game (Joint Board) issued a notice that special public meetings would be held on April 28 to consider action on the nonsubsistence regulations in response to this court's vacation of the stay of the superior court's judgment. At the April 28 meeting, the Joint Board made a written finding of emergency and adopted an emergency regulation amending 5 Alaska Administrative Code (AAC) 99.015,[1] the regulation establishing nonsubsistence areas. The amendment of 5 AAC 99.015 temporarily repealed the creation of the nonsubsistence areas and permit-

ted the Fisheries Board and the Game Board to comply with the November 26, 1993, superior court remand order, which required the Boards to adopt appropriate subsistence regulations in the nonsubsistence areas. The Joint Board also published notice of the adoption of the emergency regulation pursuant to AS 44.62.250. Because the emergency amendment could remain effective for only 120 days absent Joint Board action to make it permanent, the published notice stated the Joint Board's intention to make the amendment permanent and provided for a required public comment period.[2]

Immediately following the meeting of the Joint Board, the Board of Fisheries met to discuss the need for regulations to govern subsistence fishing in the invalidated nonsubsistence areas. It decided that both emergency and permanent regulations were needed to facilitate subsistence uses in these areas. Because it would not hold its next regular meeting until the fall of 1994, the Board voted to use AS 16.05.270 to delegate to the Commissioner of the Department of Fish and Game the authority to adopt the necessary regulations. The proposed regulations were those in effect prior to the 1992 enactment of AS 16.05.258, revised as necessary to make the regulations comply with the valid portions of AS 16.05.258. On May 6 the Commissioner adopted emergency fishing regulations. On May 9 the Commissioner issued notice of this adoption and his intention to make the emergency regulations permanent. The notice also stated that written comments on the proposed action could be submitted to the Department of Fish and Game up to June 15. On July 13 the Commissioner issued a certificate of compliance with AS 44.62.260, certifying that

1. AS 44.62.250 provides agencies with emergency regulatory powers.

2. AS 44.62.260 limits the effective period of emergency regulations to 120 days unless certain steps are taken. The notice published by the Joint Board stated:

   Notice is also given that the Joint Board of Fisheries and Game intends to make this regulation permanent under AS 44.62.260, and any person interested may present written statements or arguments relevant to that proposed action by writing to Alaska Department of Fish

and Game, Boards Support Section, Box 25526, Juneau, AK 99802, so they are received no later than June 1, 1994.

On June 10 the Deputy Commissioner issued a certification of compliance with AS 44.62.260, certifying that the statutory requirements had been met to make the emergency regulation a permanent regulation. After the Department of Law reviewed the regulation, the Lieutenant Governor filed the regulation on July 6 in accordance with AS 44.62.080.

the requirements had been met to adopt the emergency regulations as permanent regulations. On July 14 after review by the Department of Law, the Lieutenant Governor filed these regulations in compliance with AS 44.62.080.

The Board of Game also met after the Joint Board's April 28 meeting and decided to delegate to the Commissioner authority to adopt subsistence hunting regulations for the invalidated nonsubsistence areas. Unlike the Board of Fisheries, the Board of Game determined that it was unnecessary to resort to its emergency regulatory powers. The Board of Game issued a notice of the proposal to make a delegation to the Commissioner. The notice permitted written public comments until June 1. On July 22 the Commissioner adopted subsistence hunting regulations. On July 26 the Lieutenant Governor filed these regulations in accordance with AS 44.62.080.

In the meantime, Krohn commenced the present litigation by filing suit in early July 1994 challenging the validity of the regulations adopted in response to the superior court remand order in *Kenaitze v. State*. Krohn sought declaratory and injunctive relief. The superior court denied Krohn's motion for declaratory judgment and concluded that the findings of emergency satisfied AS 44.62.250. In February 1995 the superior court granted the State's cross-motion for summary judgment.

In May 1995 we reversed the November 26, 1993, judgment entered by the superior court in *Kenaitze v. State* and held that the creation of nonsubsistence areas pursuant to AS 16.05.258(c) did not violate the constitution. *State v. Kenaitze Indian Tribe*, 894 P.2d 632, 642 (Alaska 1995).[3] After we issued this decision, the permanent subsistence hunting and fishing regulations adopted by the Commissioner were repealed.

On October 2, 1995, the superior court entered judgment for the State. Krohn appeals.

## III. DISCUSSION

### A. Mootness of Issues Concerning Validity of Regulations

■ As Krohn candidly concedes, the issues he asks us to consider are technically moot because the challenged regulations have been repealed. "Since the regulations under challenge are no longer in effect in the non-subsistence areas there is no live controversy for this court to decide." Krohn nonetheless argues that the issues he raises come within the public interest exception to the mootness doctrine. He asserts that "[t]he need for judicial construction of AS 16.05.270, AS 16.05.258 and the public notice and comment provisions of the [Administrative Procedures Act] excepts this case from the mootness doctrine." He argues that the issues of the scope of the delegation power, identification of the circumstances necessary to justify the implementation of emergency regulatory powers, and the public notice and comment requirements of the Administrative Procedures Act (APA) are capable of repetition and, due to the short life span of emergency regulations, would repeatedly circumvent review under the mootness doctrine. He also argues that these issues are matters of important public interest.

We recently summarized the public interest exception to the mootness doctrine:

> The public interest exception requires the consideration of three main factors: (1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine. None of these factors is dispositive; each is an aspect of the question of whether the public interest dictates that a court review a moot issue. Ultimately the determination of whether to review a moot question is left to the discretion of the court.

*Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1196 (Alaska 1995) (citations

---

**3.** The court held that the domicile proximity requirement of AS 16.05.258(b)(4)(B)(ii) was unconstitutional, but held that this subsection was severable and that the creation of nonsubsistence areas was constitutional under the statute as altered by the court's decision. *State v. Kenaitze Indian Tribe*, 894 P.2d 632, 642 (Alaska 1995).

omitted); *see also O'Callaghan v. State*, 920 P.2d 1387, 1389 (Alaska 1996) (declining to decide moot issues).

██ The State argues that the public interest exception should not be applied because the factual and legal issues are inextricably dependent upon the particular factual and procedural circumstances that existed at the time of the adoption of the subsistence regulations and therefore are not capable of repetition. We agree. We also agree that the issues will not evade review, given that existing regulations adopted through delegations to the Commissioner are "[a]live for review of the delegation and procedural adoption questions under the APA." Further, although emergency regulations necessarily have a limited life span, their validity can be reviewed in a live controversy when someone is charged with violating them.

The State also argues that no important public interests are served by the review of the repealed 1994 regulations. The issues Krohn asks us to consider raise potentially important questions. Nonetheless, we conclude that the questions he poses are best decided in a live controversy, given the fact-specific context underlying these particular delegations and this exercise of emergency regulatory powers.

### B. *Mootness of Open Meetings Act Issues*

Krohn asserts that the permanent regulations are invalid because the Commissioner failed to comply with the Open Meetings Act (OMA), codified at AS 44.62.310–.312. Krohn argues that it is the intent of the OMA that the Boards' "actions ... be taken openly and that their deliberations be conducted openly." Krohn concludes that the Commissioner, authorized to act on behalf of the Boards, "must transact the Boards' public business in an open public meeting where every step of the deliberative and decision making process is open to public observation and scrutiny."

The State argues that the issue has been mooted by amendments to the OMA, and that under both the prior and current OMA, the Boards, or the Commissioner acting on behalf of the Boards, are not required to convene a meeting before adopting regulations. The State relies on OMA amendments making the Act applicable to "all meetings of a government body" and omitting agencies from the definition of "government body." Therefore, the State argues, "[t]here is no valid purpose to be served by the Court now interpreting the terms of the former provisions, when the current Act exempts the Commissioner's action." The State asserts that under either version of the OMA, governmental bodies are not required to hold meetings, but only required to hold open to the public any meetings that are convened. Finally, the State argues the OMA "is clearly directed at collective decision-making processes, rather than to the internal decision-making process that occurs when the agency head, one person, deliberates. A public official who has authority to deliberate alone does not have to do so in public." In support, the State points to the current OMA's general definition of "meeting" as a gathering of more than three members of a governmental body for the purpose of considering a matter upon which the body is empowered to act. AS 44.62.310(h)(2)(A).

The OMA is codified at AS 44.62.310–.312 and was amended effective June 3, 1994. Under both the prior and current versions of the OMA, all meetings of specified governmental bodies must be open to the public except as otherwise provided by the Act.[4]

---

4. In relevant part, the former version of the OMA stated:

> All meetings of a legislative body, of a board of regents, or of an administrative body, board, commission, committee, subcommittee, authority, council, agency, or other organization, including subordinate units of the above groups, of the state or any of its political subdivisions, including but not limited to municipalities, boroughs, school boards, and all other boards, agencies, assemblies, councils, departments, divisions, bureaus, commissions, or or-

ganizations, advisory or otherwise, of the state or local government supported in whole or in part by public money or authorized to spend public money, are open to the public except as otherwise provided by this section.

Former AS 44.62.310(a).

The current version of the Act, in relevant part, states:

> All meetings of a governmental body of a public entity of the state are open to the public except as otherwise provided by this section or another provision of law.

The amendments included, *inter alia*, a definition of "meeting." In relevant part, the current OMA defines meeting as

> a gathering of members of a governmental body when more than three members or a majority of the members, whichever is less, are present, a matter upon which the governmental body is empowered to act is considered by the members collectively, and the governmental body has the authority to establish policies or make decisions for a public entity.

AS 44.62.310(h)(2)(A).

█ The individual actions of the Commissioner challenged by Krohn would not come within the current OMA. Repeal of the regulations therefore moots the issues Krohn raises. Whether the OMA before its amendment required the Commissioner to hold meetings when adopting regulations on behalf of the Boards is a question not capable of repetition. Because review of this moot issue would serve no important public interest, we decline to consider it under the public interest exception to the mootness doctrine.

IV. *CONCLUSION*

AFFIRMED.

FABE, J., not participating.

---

AS 44.62.310(a), *as amended by* ch. 69 §§ 2–8, SLA 1994. The current OMA defines "governmental body" as

> an assembly, council, board, commission, committee, or other similar body of a public entity with the authority to establish policies or make decisions for the public entity or with the authority to advise or make recommendations to the public entity; "governmental body" includes the members of a subcommittee or other subordinate unit of a governmental body if the subordinate unit consists of two or more members.

AS 44.62.310(h)(1).