**FAIRBANKS FIRE FIGHTERS ASSOCIATION, LOCAL 1324, Appellant,**

v.

**CITY OF FAIRBANKS, Appellee.**

No. S–9715.

Supreme Court of Alaska.

June 7, 2002.

**1166**

Michael A. MacDonald, Downes, MacDonald & Levengood, P.C., Fairbanks, for Appellant.

Joseph W. Evans, Law Office of Joseph W. Evans, Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

This appeal poses the question whether the Alaska Labor Relations Agency has jurisdiction to decide if an issue is arbitrable. The agency ruled that it had that power, and held that the underlying issue in this case was arbitrable. The superior court concluded that the agency did not have that power, but agreed that the underlying issue was arbitrable, and so it affirmed the agency decision. We first hold that, while the arbitrability issue is technically moot under the procedural posture of this case,[1] the public interest exception to the mootness doctrine applies; we therefore reach the merits of this appeal. Because we conclude that AS 23.40.210 reserves the power to determine arbitrability to the Alaska Labor Relations Agency, we reverse the contrary ruling of the superior court and affirm the agency's ruling that it had the power to decide whether the underlying dispute was arbitrable.

## II. FACTS AND PROCEEDINGS

Fairbanks Fire Fighters Association, Local 1324(the union) filed grievances against the City of Fairbanks on behalf of Jim Rice and Lee Despain under provisions of the collective bargaining agreement (CBA) between the union and the city. The union claimed that the city improperly refused to rehire Rice and Despain for positions that were open in the fire department. The two men had previously been employed as firefighters by the city but resigned those positions under conditions that led them to sue the city for constructive discharge.[2] Rice and Despain prevailed at trial on their claims of constructive discharge, and the court awarded monetary damages in their favor but did not order reinstatement.

The union sought to enforce the CBA's arbitration provisions before the Alaska Labor Relations Agency (ALRA). However, the city responded that this grievance was not arbitrable under the CBA because Rice

---

1. Arbitrability is technically moot because the city has not appealed the superior court's ruling that the underlying dispute was arbitrable.

2. *City of Fairbanks v. Rice,* 20 P.3d 1097 (Alaska 2000).

and Despain were no longer employees of the city when the grievance arose. The city also argued that the ALRA did not have the power to decide the issue of arbitrability and that only the court could decide which issues were and were not arbitrable.

The ALRA disagreed with the city on both points. In its decision, the ALRA ruled that it had the jurisdiction to determine what cases are arbitrable under the CBA. Using that power, the ALRA further held that the underlying grievance involving Rice and Despain was arbitrable.

The city appealed the ALRA decision to the superior court. In his decision, Superior Court Judge Pro Tem Mark I. Wood held that the ALRA's ruling with regard to its ability to hear questions of arbitrability was erroneous. However, the superior court also held that the error was harmless because the arguments offered by the city as to why Rice and Despain were not covered by the CBA were meritless. The court accordingly held that the grievance was subject to the arbitration provisions of the CBA, and explicitly affirmed the ALRA's order.

The union now brings this appeal challenging the superior court's finding that the ALRA did not have the power to determine whether or not the issues in this case are arbitrable. The city has not appealed the superior court's ultimate decision that the grievance is subject to arbitration.

## III. STANDARD OF REVIEW

■ We resolve issues of standing and mootness using our independent judgment because they are questions of law involving matters of judicial policy.[3]

■ In administrative appeals, we directly review the agency action in question.[4]

We apply a "substitution of judgment" standard to the agency's decision that it has the power to determine issues of arbitrability, because that ruling is a legal conclusion concerning statutory and common law interpretation that does not implicate agency expertise. "The substitution of judgment standard ... applies where the agency's expertise provides little guidance to the court or where the case concerns statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and expertise."[5]

## IV. DISCUSSION

### A. This Case Is Moot, but We Review It under the Public Interest Exception to the Mootness Doctrine.

The party bringing this appeal, the union, prevailed before the ALRA. The superior court affirmed that ruling. The city does not appeal the adverse decisions of either the agency or the superior court. The first question is whether the union can appeal a decision in its favor simply because it was dissatisfied with the reasoning of the superior court.

### 1. This appeal is moot.

■ We have ruled that, " '[u]nder ordinary circumstances, we will refrain from deciding questions where events have rendered the legal issue moot.' "[6] A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails.[7] Mootness can also occur when "a party no longer has a personal stake in the controversy and has, in essence, been divested of standing."[8] "The basic requirement for standing in Alaska is adversity."[9]

3. *Kleven v. Yukon–Koyukuk School Dist.*, 853 P.2d 518, 525 n. 13 (Alaska 1993) (citing *Bowers Office Prod., Inc. v. Univ. of Alaska*, 755 P.2d 1095, 1096 (Alaska 1988)).

4. *N. Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 633 (Alaska 2000).

5. *Id.* (internal quotation marks omitted).

6. *Gerstein v. Axtell*, 960 P.2d 599, 601 (Alaska 1998) (quoting *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1195 (Alaska 1995)).

7. *Id.* (citing *O'Callaghan v. State*, 920 P.2d 1387, 1388 (Alaska 1996)).

8. 15 MARTIN H. REDISH, MOORE'S FEDERAL PRACTICE § 101.90 (3d ed.1998).

9. *Trustees for Alaska v. State*, 736 P.2d 324; 327 (Alaska 1987) (citing *Moore v. State*, 553 P.2d 8, 24 n. 25 (Alaska 1976)).

This case presents an unusual twist on the usual mootness consideration. In most cases, mootness is found because the party raising an appeal cannot be given the remedy it seeks even if the court agrees with its legal position.[10] In this case, the union has already been given the remedy it seeks, and we cannot give it any further relief even if we agree with the union's legal argument. The union merely asks us to resolve an intermediate legal question—whether the ALRA has the power to decide its own jurisdiction—differently than the superior court did, while reaching the same ultimate conclusion that the superior court reached.

Although the situations are not exactly the same, we have previously found that issues were moot because the appellant was able to secure relief, even though the means by which appellant secured relief were different from those argued by the appellant below.[11] The facts of the present case present an even easier case for mootness because the union has been able to secure relief. As a result, we find that the superior court's decision to affirm the determination of the ALRA has rendered the union's appeal moot.

### 2. This appeal merits application of the public interest exception to the mootness doctrine.

 We have held that we can "choose to address certain issues if they fall under the public interest exception to the mootness doctrine."[12] There are three main factors that we consider in deciding whether to apply the public interest exception: "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine."[13] None of the individual factors is dispositive; rather, we use our discretion to determine whether the public interest dictates that immediate review of a moot issue is appropriate.[14]

 With regard to the first requirement, we have refused to apply the public interest exception to unusual factual circumstances that were unlikely to repeat themselves[15] or situations where the applicable statute or regulation was no longer in force and was unlikely to be reinstated.[16] Neither of those exceptions applies here. This issue is likely to repeat itself as questions of arbitrability are likely to arise with regard to other CBAs put before the ALRA in the future, and no statutory change has occurred.

The second requirement for the public interest exception is that the issue will continually evade court review. This question is close. It is possible that this issue will arise again when it is not moot. In *Legislative Council v. Knowles*,[17] we were uncertain as to whether the issue would evade review in the future, but we were persuaded to apply the public interest exception because in that case the threatened harm resulted when a claim was brought, not when it was conclud-

---

10. *See, e.g., R.I. v. C.C.*, 9 P.3d 274, 278 (Alaska 2000); *O'Callaghan*, 920 P.2d at 1388; *Alaska Consumer Advocacy Program v. Alaska Pub. Util. Comm'n*, 793 P.2d 1028, 1032 n. 1 (Alaska 1990).

11. *Allen v. State, Dep't of Revenue, Child Support Enforcement Div.*, 15 P.3d 743, 749 (Alaska 2000) (finding that appeal of lower court's denial of claim as untimely was moot since same issue was to be decided in separate, pending case); *Gerstein v. Axtell*, 960 P.2d 599, 601 (Alaska 1998) (holding that successful acquisition of easement through eminent domain proceeding mooted claim for use of easement as property right).

12. *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1196 (Alaska 1995).

13. *Id.*

14. *See, e.g., Legislative Council v. Knowles*, 988 P.2d 604, 606–07 (Alaska 1999); *Krohn v. State, Dep't of Fish & Game*, 938 P.2d 1019, 1021 (Alaska 1997) (quoting *Kodiak Seafood Processors Ass'n*, 900 P.2d at 1196).

15. *O'Callaghan*, 920 P.2d at 1388–89 (concerning legality of specific procedures surrounding decision of candidate for lieutenant governor to change party affiliation during campaign).

16. *Krohn*, 938 P.2d at 1022–23 (refusing to decide moot issues under provisions of Open Meetings Act that were subsequently amended).

17. 988 P.2d 604 (Alaska 1999).

ed.[18] This case presents a similar situation. Arbitrability is a threshold question; thus, the harm is caused by the means of resolution and not the resolution itself. Therefore, we find that this requirement is met.

The third requirement is also satisfied. We have applied the public interest exception to situations, otherwise moot, where the legal power of public officials was in question. Specifically, in *Knowles,* we applied the exception to the issue whether the governor had the right to bring suit against the legislature.[19] Even though later enactments resolved the immediate conflict between the governor and legislature, we agreed to consider, under the public interest exception, the meaning of a constitutional prohibition of such suits.[20] Similarly, in *Kodiak Seafood Processors Ass'n v. State,*[21] we considered the issuance of a permit for fishing in waters that had been closed for over twenty-five years, despite the fact that the permit was revoked prior to trial, which rendered many of the issues moot.[22] We refused on mootness grounds to consider issues of procedural error that were admitted by the Department of Fish and Game, but we did consider whether the commissioner had exceeded his authority.[23] We ruled that "the scope of the Commissioner's power is an issue of public interest."[24]

The present case meets the "important public interest" requirement. As this case raises a question of the power of government officials, the issues are sufficiently important to the public interest to merit consideration. Therefore, the issue, though moot, has met the three-prong public policy exception test.

**18.** *Id.* at 606–07.

**19.** *Id.*

**20.** *Id.*

**21.** 900 P.2d 1191 (Alaska 1995).

**22.** *Id.* at 1193–94.

**23.** *Id.* at 1196.

**24.** *Id.*

**25.** 798 P.2d 1281 (Alaska 1990) [hereinafter "PSEA"].

## B. The ALRA Has Jurisdiction To Decide Whether an Issue Is Arbitrable.

 The union argues that there are statutory, contractual, and policy reasons that support the agency's power to decide the arbitrability of this dispute. The superior court disagreed and ruled that "the ALRA erred by concluding that it had jurisdiction to resolve [arbitrability]."

In *State v. Public Safety Employees Ass'n*[25] we held that questions of arbitrability should be determined by the court unless the parties "clearly and unmistakably provide otherwise."[26] The decision in *PSEA* adopted the federal rule as stated by the United States Supreme Court in *AT & T Technologies, Inc. v. Communications Workers of America.*[27] The Supreme Court based its decision in that case on the long-established legal principle that because the duty to arbitrate is contractual in nature, " 'a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty.' "[28] However, *PSEA* is inapplicable to the present situation.

*PSEA* dealt with the issue of whether a court or an arbitrator should decide questions of arbitrability. Here, the issue is whether the court or the ALRA, an administrative agency, has jurisdiction to determine questions of arbitrability. The latter issue is covered by positive statutory law giving the ALRA jurisdiction. Specifically, AS 23.40.210 provides, in relevant part:

> The agreement shall include a grievance procedure which shall have binding arbitration as its final step. Either party to the agreement has a right of action to

**26.** *Id.* at 1285 (quoting *AT & T Techs., Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

**27.** 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

**28.** *Id.* at 649, 106 S.Ct. 1415 (quoting *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)).

enforce the agreement by petition to the labor relations agency.[29]

The union asserts that the ALRA has the power to decide arbitrability because this statute gives the agency the power to "enforce the CBA, including the requirement for grievance arbitration." We agree.

 Because arbitrators have such broad discretion, it is often problematic for them to decide their own jurisdiction, for if they are wrong, there may be essentially no review. This is so because the superior court reviews an arbitrator's decision under a standard giving extreme deference to the arbitrator.[30] On the other hand, a decision by the ALRA goes through an administrative appeals process in which the decision is subject to varying standards of scrutiny[31] that allow for a much more piercing review than review of an arbitrator's decision. Therefore, the concerns about the non-appealable nature of an arbitrator's award are not present with administrative agency decisions.

## V. CONCLUSION

Because this appeal does not present a live controversy we conclude that the appeal is moot. But we also conclude that the public policy exception to the mootness doctrine applies and we therefore reach the merits of the appeal. For the reasons stated above, we hold that the ALRA has jurisdiction to decide questions of arbitrability under AS 23.40.210. We therefore REVERSE the decision of the superior court; we AFFIRM the decision of the ALRA that it had the power to decide whether the present dispute is arbitrable.

---

29. AS 23.40.210(a).

30. An arbitrator's award arising out of a labor management contract is reviewed under a gross error standard, which means that "only those mistakes which are both obvious and significant" warrant reversing the arbitrator's award. *Public Safety Employees Ass'n, Local 92, Int'l Union of Police Ass'ns, AFL–CIO v. State*, 895 P.2d 980, 984 (Alaska 1995) (quoting *City of Fairbanks v. Rice*, 628 P.2d 565, 567 (Alaska 1981)). We have also held that when the agreement incorporates the Uniform Arbitration Act, AS 09.43.010–.180, an even stricter standard applies: "there are no statutory grounds for review of an arbitrator's determination as to the meaning of contract provisions which do not pertain to the issue of arbitrability." (*Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 661 (Alaska 1995) (internal quotations omitted).)

31. Review of administrative decisions occurs under varying standards based on the issue being appealed:

We have recognized four principal standards of review of administrative decisions. The "substantial evidence" test is used for questions of fact. The "reasonable basis" test is used for questions of law involving agency expertise. The "substitution of judgment" test is used for questions of law where no expertise is involved. The "reasonable and not arbitrary" test is used for review of administrative regulations.

*Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992) (citing *Jager v. State*, 537 P.2d 1100, 1107 n. 23 (Alaska 1975)).