NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

MARGARET M. TESTARMATA, )
)  Supreme Court No. S-19033
Appellant, )
)  Superior Court No. 3SW-23-00028 CI
v. )
)  MEMORANDUM OPINION
STATE OF ALASKA, DEPARTMENT )  AND JUDGMENT*
OF FAMILY & COMMUNITY )
SERVICES, OFFICE OF )  No. 2093 – May 21, 2025
CHILDREN'S SERVICES, )
)
Appellee. )
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jason M. Gist, Judge.

Appearances: Amanda J. Harber, 49th State Law, LLC, Soldotna, for Appellant. Lael Harrison, Assistant Attorney General, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Carney, Borghesan, and Pate, Justices. [Maassen, Chief Justice and Henderson, Justice, not participating.]

## I.   INTRODUCTION

A mother sued the Office of Children's Services (OCS) after a foster parent authorized a tetanus vaccine for her daughter. The superior court determined

---

\*    Entered under Alaska Appellate Rule 214.

that the mother's case was moot because her daughter had turned 18 and dismissed the case. The mother appeals. We affirm the superior court's dismissal.

## II.    FACTS AND PROCEEDINGS

### A.    Background

Margaret Testarmata's 16-year-old daughter was in OCS custody in March 2022. After her daughter received a flu shot without her consent, Testarmata asked OCS to inform the foster parent in writing that neither the girl nor her foster parent could consent to any elective vaccinations. And she asked OCS to contact her or her attorney if any urgent vaccination were needed.

A few weeks later, the girl accidentally cut herself with a knife in art class. Her foster parent took her to the local emergency room, where she received a tetanus shot with the foster parent's consent.

Testarmata was not consulted before the tetanus shot was given. She asserts that she was not informed of it by OCS or the foster parent, but learned of it only later when she received an explanation of benefits from her insurer.

### B.    Administrative Appeal

After learning about the tetanus shot, Testarmata filed a grievance with OCS. She objected to her daughter receiving a vaccination without her consent. She requested that OCS revise her medical consent form to state that no vaccinations could be given to her daughter without Testarmata's consent; that a copy of the revised consent form be sent to her; that the foster parent provide Testarmata an explanation of why she authorized the tetanus shot; that OCS revise its policy manual; and that her daughter's foster parent and all OCS foster parents receive additional training about the limits of their authority. Testarmata also asked that "OCS enter into negotiations to resolve my claim for damages due to its action." An OCS reviewer concluded that the foster parent had the authority to consent to the tetanus shot.

Testarmata then sought a "Level 2" review. The OCS regional manager reviewed her complaint and consulted with an OCS nurse consultant and the Alaska

Department of Health. The regional manager determined that the foster parent had acted appropriately. She advised Testarmata that, according to the Department of Health, the tetanus shot was not an elective vaccination because the girl was injured and it had been more than five years since her last tetanus shot.

Testarmata then requested a third level review. OCS's Division Operations Manager responded in a three-page letter. He noted that he had reviewed all of the documents Testarmata had submitted as well as the relevant OCS policy. He excerpted relevant portions of OCS's "Medical, Dental, and Vision Care" policy.

OCS policy recognized that, except for emergencies and other limited circumstances, parents of children in foster care retain the right to consent to major medical care.[1] But the policy did not define "major medical care" or emergency care; instead it offered examples. Among the examples of major medical care were planned hospitalizations, procedures involving anesthesia or sedation, psychotropic medication, and "elective immunizations not required for school or daycare attendance."

The policy authorized foster parents to consent to routine or emergency medical care. Examples of emergency care included infections requiring antibiotics, broken limbs, allergic reactions, and profuse bleeding. And routine medical care included checkups and required vaccines, although parental consent was specifically needed for flu and COVID vaccines.

The operations manager recognized that OCS policy did not specifically address tetanus shots. He stated that the vaccine would be considered elective in this context "if sought and provided in a non-emergency basis." But he concluded that, because the foster mother considered the situation urgent and took Testarmata's daughter to the emergency room, the tetanus shot the girl received was emergency

---

[1] AS 47.10.084(c).

medical care. He noted that the Department of Health doctor he consulted considered the vaccine "appropriate under emergency circumstances."

Despite his conclusion that the foster parent had acted appropriately under the circumstances, the operations manager "acknowledge[d] there is room for misinterpretation of OCS policy which could result in medical care being unintentionally provided without proper authorization." He advised Testarmata that he would therefore refer the matter to OCS's policy committee for further consideration. And he advised her that he had directed the assigned OCS workers to ensure that her daughter's medical care complied with all relevant policies. He also informed Testarmata that his decision was the final agency decision and she could appeal to the superior court within 30 days.

### C. Court Proceedings

Testarmata appealed to the superior court.[2] Along with her notice of appeal, Testarmata filed a motion to waive her cost bond. Testarmata asserted that she was a public interest litigant as that term was previously defined in our caselaw.[3] The court, without comment, signed the form order she had lodged with her motion.

Five months later, after hiring counsel, Testarmata also requested a trial de novo.[4] She argued that a trial de novo was needed because OCS's grievance process was inadequate and violated her due process rights. She contended that OCS's grievance procedures were impermissibly vague because they required "thoughtful

---

[2]    *See* Alaska R. App. P. 601(b) (authorizing superior court review of final agency decisions).

[3]    *See Rosen v. State Bd. of Pub. Acct.*, 689 P.2d 478, 480 (Alaska 1984) (citing *Sisters of Providence in Wash., Inc. v. State, Dep't of Health & Soc. Servs.*, 648 P.2d 970, 979-80 (Alaska 1982)), *abrogation recognized by Fuhs v. Gilbertson*, 186 P.3d 551, 557 (Alaska 2008).

[4]    *See* Alaska R. App. P. 609(b) (authorizing superior court discretion to grant trial de novo in appeal from administrative agency).

consideration" of complaints but did not explain what "thoughtful consideration" was. She complained that her first level review did not explain its reasoning, the second level review consulted external sources without giving her a chance to respond, and the third level review was "silent regarding [its] actual decision making process." She also claimed that the record was inadequate and the agency was biased.

OCS opposed Testarmata's motion and included a cross-motion to dismiss the case as moot, pointing out that Testarmata's daughter had turned 18 and was now an adult. Testarmata replied, asserting that the matter was not moot. She argued that because the court had waived her cost bond based on her assertion that she was a public interest litigant, the public interest exception to mootness controlled her case.

The superior court granted OCS's motion dismissing the case in February 2024. The court concluded that because the daughter was an adult, OCS no longer needed to determine "Testarmata's position as to vaccines" and that "the remedies that [she] seeks from this court are now moot at least as to her."

The court rejected Testarmata's argument that she was a public interest litigant because the court had granted her a cost bond waiver. It observed that it had already "explicitly stated . . . that it did not read the prior court's order waiving [her] cost bond 'as a declaration that she is in fact a public interest litigant.' "

The court also separately rejected her argument that the public interest exception to mootness applies on its merits. Applying the three-factor test from *Fairbanks Fire Fighters Association, Local 1324 v. City of Fairbanks*,[5] it first found that the factual circumstances of the tetanus shot given to her daughter were "unlikely

---

[5] 48 P.3d 1165, 1168 (Alaska 2002) ("[W]e consider . . . '(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.' " (quoting *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1196 (Alaska 1995))).

to repeat themselves." Turning to the second factor, the court acknowledged that "the issue presented is certainly unique" but concluded that similar incidents were not likely to evade review because most children in OCS custody were not close to their eighteenth birthdays. Finally, the court agreed with Testarmata that the issue of obtaining proper parental consent for medical care of children in OCS custody was an important issue. But because whether medical care qualifies as emergency care depends so much on the specific facts and circumstances surrounding it, the court reasoned that resolution of Testarmata's claim was not in the public interest because it would not guide future foster parents. The court denied Testarmata's motion for trial de novo and granted OCS's cross-motion to dismiss the case because it was moot.

Testarmata appeals, challenging both the dismissal for mootness and denial of a trial de novo.

## III. STANDARD OF REVIEW

Whether an issue is moot is a question of law we review de novo.[6] But whether the issue falls within the public interest exception is left to the discretion of the trial court and reviewed for abuse of discretion.[7]

## IV. DISCUSSION

Testarmata's appeal of OCS's response to her grievance became moot when her daughter turned 18. "A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails."[8] But under the "long recognized" public interest exception, a court may decide "issues whose importance and ability to evade review justify an immediate

---

[6] *Young v. State*, 502 P.3d 964, 969 (Alaska 2022).

[7] *See id.* at 969-72.

[8] *Fairbanks Fire Fighters Ass'n*, 48 P.3d at 1167.

decision, despite technical mootness."[9]  Courts weigh three factors when considering whether to apply the public interest exception:  "1) whether the disputed issues are capable of repetition, 2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues and, 3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine."[10]  No single factor is dispositive.[11]

Testarmata argues that the superior court erred in the way it applied the three-factor test for exception to her case.  She also separately asserts that because the court had already determined she was a public interest litigant, it was required to consider her case under the public interest exception to mootness.

Testarmata argues that the superior court erred by concluding that the first factor weighed against her.  The court concluded that the unique circumstances of this case were what "caused [the foster parent] to believe the situation was urgent," and those circumstances were not likely to be repeated.  We see the issue more broadly:  whether children in OCS custody who have not received a tetanus shot within five years of the time they see a medical provider may be given a tetanus shot without parental consent.  We agree with Testarmata that the issue is likely to repeat itself.

Testarmata next argues that the superior court erred when it concluded that the issue will not escape review if her case is dismissed for mootness.  The issue in Testarmata's own case will escape review because her daughter is 18.  But not all, or even most, of the children in OCS custody are as close to their eighteenth birthday as Testarmata's daughter.  Cases in which a parent's appeal is mooted because the child reached the age of 18 are presumably "only a subset of those cases in which that issue

---

[9]     *Taylor v. Alaska Legis. Affs. Agency*, 529 P.3d 1146, 1153 (Alaska 2023) (quoting *Legis. Council v. Knowles*, 988 P.2d 604, 606 (Alaska 1999)).

[10]     *Id.* (quoting *Legis. Council*, 988 P.2d at 606).

[11]     *Young*, 502 P.3d at 970.

could arise."[12]  Appeals from parents of younger children who received tetanus shots without their consent will not become moot like Testarmata's did.  We agree with the superior court that the issue is not likely to evade review.[13]

Testarmata also argues that the superior court erred when it determined that resolution of the issue was not important for the public interest.  The superior court concluded that "the public at large" would not be served by resolution of the issue in Testarmata's case.  While we agree with the superior court's statement, in our view the broader issue of OCS obtaining proper authorization for tetanus shots under similar circumstances is of interest to "the public at large."

That issue is an important one that may well be repeated.  And it is presumably of interest at least to the parents of the many children in OCS custody.  But it is not likely to evade review — even if Testarmata's case is dismissed.  The decision whether to dismiss a case due to mootness is committed to the superior court's discretion.[14]  The court did not abuse its discretion by declining to find an exception.[15]

Testarmata separately argues that the superior court erred by declining to apply the public interest exception because it had already determined that she was a public interest litigant when it granted her cost bond waiver.  But the court had already "explicitly stated" that its waiver of her cost bond did not mean it considered her to be a public interest litigant.  In addition, "a public interest litigant" was formerly

---

[12]    *Peter A. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 146 P.3d 991, 997 (Alaska 2006).

[13]    Testarmata insists that the issue is likely to escape review because this was the second time her daughter received a vaccination without her consent.  But whether it is the first or second time does not affect our analysis of whether children in OCS custody receive a tetanus shot without parental consent if it has been over five years since their last vaccination.

[14]    *Young*, 502 P.3d at 970.

[15]    *Peter A.*, 146 P.3d at 996-97 (declining to apply public interest exception because issue unlikely to be circumvented, even if first and third factors present).

recognized only in connection with protection from a Civil Rule 82 award of attorney's fees.[16] Even that limited status was abrogated by the Legislature in 2003 by the passage of AS 09.60.010.[17] It has no bearing on a court's determination whether a case is moot.

The superior court did not abuse its discretion when it dismissed Testarmata's appeal as moot. Testarmata was therefore not entitled to a trial de novo.[18]

## V. CONCLUSION

We AFFIRM the superior court's dismissal.

---

[16] *See Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974).

[17] *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 280-81 (Alaska 2015).

[18] *See Alaska Cmty. Action on Toxics v. Hartig*, 321 P.3d 360, 370 (Alaska 2014) (declining to address remaining issues because case was moot).