LEGISLATIVE COUNCIL, Appellant and Cross–Appellee,

v.

Tony KNOWLES, Governor for the State of Alaska, Appellee and Cross–Appellant.

Nos. S–8143, S–8144.

Supreme Court of Alaska.

Oct. 1, 1999.

Pamela Finley and James P. Crawford, Legislative Affairs Agency, Division of Legal and Research Services, Juneau, for Appellant and Cross–Appellee.

James L. Baldwin, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee and Cross–Appellant.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

During a special session, the Alaska legislature overrode Governor Tony Knowles's veto of a bill that it had passed in regular session. The governor sued the Legislative Council, claiming that the legislature's override vote was untimely and did not affect his veto. The superior court agreed, declaring the override vote invalid and the veto effective. The Council argues that the Alaska Constitution barred the governor from filing this suit and that the superior court thus erred in deciding the governor's claim on its merits. We conclude that the Council's argument has merit. Though formally filed in the governor's name against the Council, this suit is in substance an action brought in the name of the state against the legislature. Because article III, section 16 of the Alaska Constitution expressly forbids such actions, we vacate the judgment and direct the superior court to dismiss the action.

## I. FACTS AND PROCEEDINGS

On April 26, 1996, during its second regular session, the Nineteenth Alaska Legislature passed Committee Substitute for Senate Bill (C.S.S.B.) 162, an act relating to land used for agricultural purposes.[1] On May 7, after the regular session expired, the governor called a special session, which convened the next day. On May 14 the legislature recessed its special session until June 3. Before recessing, it delivered C.S.S.B. 162 to Governor Knowles for his consideration. Governor Knowles vetoed the bill on May 30, transmitting his veto message to the legislature a day later. On June 6 the legislature, having resumed its special session, voted to override the governor's veto.

These events set the stage for the present controversy. The day after the legislature voted to override his veto, Governor Knowles, acting in his own name as governor of Alaska, filed a complaint in superior court alleging that the legislature's vote to override his veto of C.S.S.B. 162 had been untimely under article II, section 16 of the Alaska Constitution.[2] The complaint requested a judgment declaring that the governor's veto of the bill remained in effect and named as defendants the Legislative Council and fourteen individual legislators who compose it.[3] The Council counterclaimed against the governor, seeking a declaration that the override vote was valid.

All parties eventually filed dispositive motions: The governor moved for summary judgment, the Council cross-moved for summary judgment, and all of the defendants— the individually named legislators and the Council—moved for dismissal.

The superior court granted the individual legislators' dismissal motions, concluding that the legislators were entitled to legislative

1. C.S.S.B. 162(FIN), 19th Leg.2d Sess. (1996). The act was printed as Ch. 1, FSSLA 1996.

2. Article II, section 16 of the Alaska Constitution, provides:

> Upon receipt of a veto message during a regular session of the legislature, the legislature shall meet immediately in joint session and reconsider passage of the vetoed bill or item. Bills to raise revenue and appropriation bills or items, although vetoed, become law by affirmative vote of three-fourths of the membership of the legislature. Other vetoed bills become law by affirmative vote of two-thirds of the membership of the legislature. Bills vetoed after adjournment of the first regular session of the legislature shall be reconsidered by the legislature sitting as one body no later than the fifth day of the next regular or special session of that legislature. Bills vetoed after adjournment of the second regular session shall be reconsidered by the legislature sitting as one body no later than the fifth day of a special session of that legislature, if one is called. The vote on reconsideration of a vetoed bill shall be entered on the journals of both houses.

3. The Legislative Council is a permanent interim committee of the Alaska Legislature created under article II, section 11 of the Alaska Constitution and comprises fourteen legislators. *See* Alaska Const. art. II, § 11; AS 24.20.020.

immunity under article II, section 6 of the Alaska Constitution.[4] But because the court believed that neither this constitutional grant of legislative immunity nor article III, section 16—which prohibits the governor from suing the legislature—barred a suit against the Council, the court denied the Council's motion to dismiss.

Moving to the merits raised in the competing motions for summary judgment, the court ruled in favor of the governor, declaring that the legislature's override vote was untimely, that the governor's veto remained in effect, and thus that C.S.S.B. 162 had not been enacted into law.[5]

The Council appeals these rulings; the governor cross-appeals.

## II. DISCUSSION

### A. The "Public Interest" Exception to the Mootness Doctrine Applies to the Issue of Whether Article III, Section 16 of the Alaska Constitution Bars the Governor's Suit against the Council.

■ At the outset, we confront the issue of mootness. In 1997, the year after this controversy arose, the legislature enacted and the governor signed into law a bill covering essentially the same subject matter as C.S.S.B. 162.[6] Thus the question of whether

C.S.S.B. 162 was validly enacted is technically moot.

■ But this court has long recognized a "public interest" exception to the mootness doctrine.[7] In determining whether to apply the public interest exception, we consider three factors designed to identify issues whose importance and ability to evade review justify an immediate decision, despite technical mootness:

> 1) whether the disputed issues are capable of repetition, 2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues and, 3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.[8]

The primary constitutional issue presented here—whether article III, section 16 forbids the governor's suit against the Council—easily meets the first and third criteria for an exception. This issue is certainly capable of repetition. And it is also unquestionably an issue of great public importance, for it goes to the heart of the delicate constitutional balance between the powers of two coordinate branches of government.[9]

The second factor's presence is not as obvious. It is of course conceivable that the question of whether article III, section 16 bars the governor from suing the Council

---

4. Article II, section 6 of the Alaska Constitution provides:

   Legislators may not be held to answer before any other tribunal for any statement made in the exercise of their legislative duties while the legislature is in session. Members attending to, going to, or returning from legislative sessions are not subject to civil process and are privileged from arrest except for felony or breach of the peace.

5. Specifically, the court, construing the "fifth day" clause of article II, section 16 of the Alaska Constitution (set out above in footnote 2), ruled that when the governor delivers a vetoed bill to the legislature after a first special session convenes, the legislature can override the veto within five days of delivery—even if the deadline falls after the fifth day of the first special session. But the court also ruled that the five-day deadline is not tolled by a recess or adjournment that does not terminate the special session. Because the legislature had not voted by the fifth day after delivery of the vetoed bill—June 5, 1996—the court concluded that its override vote was un-

timely and that C.S.S.B. 162 had not been enacted into law. Our disposition of this appeal makes it unnecessary to consider the superior court's analysis or the parties' arguments concerning the proper interpretation of article II, section 16.

6. See Ch. 20, SLA 1997.

7. See Department of Health & Soc. Servs. v. Alaska State Hosp. & Nursing Home Ass'n, 856 P.2d 755, 766 (Alaska 1993); Doe v. State, 487 P.2d 47, 53 (Alaska 1971).

8. Department of Health & Soc. Servs., 856 P.2d at 766.

9. See Thomas v. Rosen, 569 P.2d 793, 795 (Alaska 1977) (granting review under the public interest exception of whether the governor's exercise of a line-item veto was constitutional, commenting that it "pits the political branches of our state government in a fundamental separation of powers confrontation").

over the timeliness of a veto could arise again and be decided before being mooted by new legislation. But the express harm that the constitution protects against in barring the governor from bringing actions "in the name of the State ... against the legislature" [10] occurs when the action is brought, not when it is concluded.

Considering the importance and unique nature of the protection embodied in article III, section 16, we conclude that the question of whether this section applies in the circumstances presented here merits an exception to the mootness doctrine.

B. *Article III, Section 16 Bars This Suit by the Governor against the Council.* [11]

■ Section 1 of article III of the Alaska Constitution vests the executive power of the state in the governor. [12] Article III, section 16 gives the governor broad power to sue in the name of the state but at the same time bars the governor from turning this power against the legislature:

> The governor shall be responsible for the faithful execution of the laws. He may, by appropriate court action or proceeding brought in the name of the State, enforce compliance with any constitutional or legislative mandate, or restrain violation of any constitutional or legislative power, duty, or right by any officer, department, or agency of the State or any of its political subdivisions. This authority shall not be construed to authorize any action or proceeding against the legislature.

In concluding that this provision did not forbid the governor to sue the Council, the superior court reasoned that "[p]laintiff brought this lawsuit in the name of the Governor as head of the executive branch of state government and not in the name of the State of Alaska" and that "[a] suit against the Legislative Council, a permanent interim committee with separate legal existence under Article II, § 11 of the Alaska Constitution, is not a suit against the Legislature."

The Council disputes both bases of the superior court's ruling, arguing that the governor should not be allowed to evade article III, section 16's restrictions by simply altering the form of his complaint. The Council asserts that although the governor has sued in his own name as governor of Alaska, this is in substance an action brought in the name of the state. Similarly, it asserts that by opting to proceed against a functional equivalent of the legislature—the Council—the governor has effectively sued the legislature itself.

The governor responds that article III, section 16 "was not intended to prevent the governor from protecting his power from usurpation by the legislature." In the governor's view, "the Court must have jurisdiction to determine the rights of the coordinate branches of state government." Insisting that the Council reads section 16's language barring actions against the legislature too broadly, the governor urges us to hold the constitutional bar inapplicable here because this suit "was brought in the Governor's capacity as head of the executive branch of state government," "did not request [that] the legislature ... be enjoined or compelled to do anything," and "was brought not against the legislature but its agent the Council."

We find the Council's arguments persuasive.

1. *Although filed by Tony Knowles, as "Governor for the State of Alaska," this suit is an action brought in the name of the state.*

This suit does not confine itself to internal matters concerning only the governor, the governor's office, or the executive

**10.** Alaska Const. art. III, § 16.

**11.** We review constitutional issues independently, giving no deference to the trial court's decision. *See Hickel v. Cowper,* 874 P.2d 922, 926 (Alaska 1994). In construing a constitutional provision, we must give it a "reasonable and practical interpretation in accordance with common sense" and consonant with "the plain meaning and purpose of the provision and the intent of the framers." *ARCO Alaska, Inc. v. State,* 824 P.2d 708, 710 (Alaska 1992).

**12.** Article III, section 1 of the Alaska Constitution provides: "The executive power of the State is vested in the governor."

branch of government. Rather, as we have indicated above in Part II.A., it raises important constitutional questions of the allocation of powers among coordinate branches of government. Because the suit tests the basic constitutional structure of Alaska's tripartite system of government, it necessarily involves a matter of general public importance—one that transcends the executive branch's parochial interests and implicates interests common to all Alaska citizens. And although article III, section 16 authorizes the governor to sue in the name of the state, it confers no express power to sue in any narrower capacity. No other provision in article III expressly empowers the governor to raise issues of general public importance by suing in the name of the governor's office or of the executive branch. By any realistic measure, this suit involves the interests of the state as a whole.

Moreover, the governor asks for a ruling "that the Nineteenth Alaska Legislature ... did not have authority under art. II, sec. 16 of the Alaska Constitution to consider a vote to override CSSB 162(FIN)," "that CSSB 162(FIN) cannot become law until the legislature properly exercises the veto override provisions of art. II, sec. 16 of the Alaska Constitution," and "that Governor Knowles'[s] veto of CSSB 162(FIN) remains in effect." By making these requests, the governor plainly seeks to enforce compliance with a constitutional mandate and to restrain violation of a constitutional power.

■ By so concluding, we necessarily reject the governor's suggestion that declaratory judgment actions are categorically exempt from the strictures of article III, section 16 because such actions merely seek judgments declaring the law without directly enforcing compliance or enjoining or compelling conduct. To determine whether an action or proceeding is brought to enforce compliance with a constitutional provision or restrain

violation of a constitutional power in violation of article III, section 16, we must consider the practical goal of the action rather than the procedural path it employs to attain that goal.

Using substance rather than form as a measure of constitutional compliance, we hold this suit to be an "action or proceeding brought in the name of the State [to] enforce compliance with ... [a] constitutional ... mandate, or restrain violation of [a] constitutional ... power." [13]

2. *Although filed against the Council, this suit is an action against the legislature.*

The remaining question is whether by naming the Council and its individual legislator-members as defendants, the governor evades section 16's third sentence, which prohibits him from bringing actions in the name of the state "against the legislature." Again, the question pits form against substance, and again, we conclude that substance must prevail.

The Alaska Constitution establishes the Council to "meet between sessions" and "perform duties ... as provided by the legislature." [14] Under law, the Council comprises legislators from both houses, [15] who exercise a broad range of legislative powers and serve as the legislature's embodiment between sessions. [16] The Council's members also supervise a permanent staff, headed by an executive director, [17] that performs an array of administrative services for the legislative branch and the general public. [18]

The governor asserts that this suit escapes section 16's prohibition because it names the Council not in its interim legislative capacity but only in its service-agency capacity. [19] But the governor's pleadings belie this assertion. Neither the original nor the amended complaint gives any indication that the governor

---

13. Alaska Const. art. III, § 16.

14. Alaska Const. art. II, § 11.

15. *See* AS 24.20.020.

16. *See* AS 24.20.060.

17. *See* AS 24.20.050.

18. *See* AS 24.20.060(4).

19. *See* AS 24.20.010 ("The Alaska Legislative Council is established as a permanent interim committee and service agency of the legislature.").

named the Council as a defendant in its limited capacity as a service agency. Both complaints name the Council as a defendant only in its capacity as "a permanent interim committee of the legislature." And both also name individual legislators only in their general capacity as legislators and Council members.

More significant is that the complaints assert no particular service-related acts or functions as a basis for proceeding against the Council or its individual legislator-members. By asserting that "[t]he legislature's vote to override the governor's veto of CSSB 162(FIN) is in violation of art. II, sec. 16 of the Alaska Constitution," the complaints aim beyond the Council, targeting an act of the legislature that is purely and quintessentially legislative.

An action of this kind falls squarely within the originally intended scope of section 16's prohibition. Delegate Victor Rivers, Chairman of the Constitutional Convention's Committee on the Executive Branch, described the relationship between the broad grant of authority given to the governor under the second sentence of section 16 and the restriction of that authority set out in the section's third sentence. He explained that despite the governor's

> power by appropriate actions or proceedings in the court, brought in the name of the state[ ] to enforce compliance with any constitution[al] or legislative mandate[,] ... [the governor] has no authority ... to act in that manner in any proceeding against the legislature. The legislature is the supreme elected body and as such [the governor] is answerable to [it] and to [its] interpretations and handling of matters of law.[20]

By directing against the legislature's interim alter ego an action questioning the propriety of a purely legislative act, the governor effectively seeks to hold the legislature itself "answerable" to him for its "interpretations and handling of matters of law." [21] The substance of this suit thus infringes upon the legislature's constitutional domain in precisely the manner that the Constitution's drafters intended to prohibit.

We readily acknowledge the legitimacy of the governor's expressed interest in preserving the broad powers of litigation "that, in essence, makes him the strong executive that the framers intended." But in our view, the governor could have asserted these powers readily and effectively without directing a suit across the clear constitutional line that separates legislative and executive powers.[22] We would ignore the constitution's intended meaning if we held, in circumstances like these, that the governor could successfully evade section 16's restrictions by suing the Council instead of the legislature.

### III. CONCLUSION

We therefore hold that this suit is an action brought "in the name of the State" and "against the legislature." Because article III, section 16 forbids such actions, we VACATE the superior court's order declaring C.S.S.B. 162 invalid and REMAND for entry of an order of dismissal.[23]

---

**20.** 3 Proceedings of the Alaska Constitutional Convention 1986 (January 13, 1956).

**21.** *Id.*

**22.** For example, as the Council observes in its briefs, "[T]he Governor could have sued the commissioner responsible for enforcing the law, as was done in *State ex rel. Hammond v. Allen,* 625 P.2d 844 (Alaska 1981)...."

**23.** Our conclusion that under the circumstances presented in this case a suit against the Council is equivalent to a suit against the legislature also compels dismissal of the suit as to individual legislators named in their capacity as Council members. We do not understand the suit to name these Council members as parties solely in their capacity as legislators. Accordingly, we need not consider whether dismissal of Council members would independently be required under article II, section 6, which provides legislators with immunity in performing their legislative duties: "Legislators may not be held to answer before any other tribunal for any statement made in the exercise of their legislative duties while the legislature is in session."

Our disposition also makes it unnecessary to address the timing issues raised by the governor under article II, section 16 of the Alaska Constitution. Although the timing issues that the Council affirmatively raised before the superior court in its counterclaim and that it now asserts before this court on cross-appeal might not be barred by article III, section 16, the governor's declaratory judgment action obviously prompted the Council's assertion of these issues; at oral argument, the Council consented to our treatment of its affirmatively raised timing arguments as a contingent cross-appeal.