*Notice: This opinion is subject to correction before publication in the Pacific Reporter. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| TREG R. TAYLOR, in an official capacity as Attorney General for the State of Alaska, | ) ) ) ) | Supreme Court No. S-18292 |
|  | ) | Superior Court No. 3AN-21-06391 CI |
| Appellant, | ) ) | O P I N I O N |
| v. | ) ) | No. 7659 – May 26, 2023 |
| ALASKA LEGISLATIVE AFFAIRS AGENCY, | ) ) ) |  |
| Appellee. | ) ) |  |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Jessica M. Alloway and Margaret Paton-Walsh, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellant. James E. Torgerson, Kevin Cuddy, and Connor R. Smith, Stoel Rives LLP, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

WINFREE, Chief Justice.

## I.    INTRODUCTION

The primary issue before us is whether the Alaska Constitution bars a lawsuit that Alaska Attorney General Treg R. Taylor brought against the Legislative Affairs Agency.  The superior court held that it does; we affirm that decision.

## II.    FACTS AND PROCEEDINGS

### A.    Constitutional And Statutory Backdrop

This appeal arises from a 2021 dispute between the executive and legislative branches over when an appropriations bill passed by the legislature would take effect, with potentially significant consequences for funding state government in the subsequent fiscal year.  A brief overview of relevant constitutional and statutory provisions will provide some context for the dispute.

Alaska's general legislative sessions begin on the third Tuesday of January each year.[1]   The Alaska Constitution expressly provides that a general legislative session may last no longer than 120 consecutive days unless it is extended by the legislature for up to 10 consecutive days.[2]   Special legislative sessions "may be called by the governor or by vote of two-thirds of the legislators."[3]   When a governor calls a special session, "legislation shall be limited to subjects designated in his

---

[1]    Alaska Const. art. II, § 8 (providing general legislative session convening date may be set by law); AS 24.05.090 (setting third Tuesday in January for convening general legislative session).

[2]    Alaska Const. art. II, § 8 ("The legislature shall adjourn from regular session no later than one hundred twenty consecutive calendar days from the date it convenes except that a regular session may be extended once for up to ten consecutive calendar days."); *cf.* AS 24.05.150(b) ("The legislature shall adjourn from a regular session within 90 consecutive calendar days, including the day the legislature first convenes in regular session.").

[3]    Alaska Const. art. II, § 9; *see also* Alaska Const. art. 3, § 17 (providing that governor may convene legislature "[w]henever the governor considers it in the public interest").

proclamation calling the session, to subjects presented by [the governor], and the reconsideration of bills vetoed by [the governor] after adjournment of the last regular session."[4] A special session is limited to 30 days.[5]

Alaska's fiscal year is July 1 to June 30,[6] and the State's budgets are based on an annual appropriations model.[7] The power to appropriate annual budget funds is vested solely with the legislature.[8] Bills passed by the legislature, including budget appropriations bills, generally are effective 90 days after enactment,[9] but a different effective date may be established by an affirmative two-thirds vote of the legislative members in each house,[10] which is referred to as a super-majority vote. Given a general legislative session's timing and the next fiscal year's inception, having an annual budget's effective date match the fiscal year's beginning may require a super-majority vote for an express effective date less than 90 days from enactment.

---

[4] Alaska Const. art. II, § 9.

[5] *Id.*

[6] AS 37.05.920.

[7] *State v. Alaska Legis. Council*, 515 P.3d 117, 125-27 (Alaska 2022).

[8] Alaska Const. art. IX, § 12 (instructing governor to submit anticipated budget and proposed appropriations bill to legislature); Alaska Const. art. II, § 13 (providing that legislative "[b]ills for appropriations shall be confined to appropriations"); Alaska Const. art. IX, § 13 ("No money shall be withdrawn from the treasury except in accordance with appropriations made by law."); s*ee also Alaska Legis. Council v. Knowles*, 21 P.3d 367, 371 (Alaska 2001) (noting Alaska Constitution "gives the legislature the power to legislate and appropriate" (footnote omitted)).

[9] Alaska Const. art. II, § 18 ("Laws passed by the legislature become effective ninety days after enactment.").

[10] Alaska Const. art. II, § 18 ("The legislature may, by concurrence of two-thirds of the membership of each house, provide for another effective date.").

Lastly, the governor is prohibited from suing the legislature.[11]

## B.  Facts

The legislature convened in January 2021 for a general legislative session.[12]  Anticipating that the legislature would not pass a budget bill by the end of the general session, with a week left in the session Governor Mike Dunleavy issued an Executive Proclamation calling for a special session to convene on May 20 to consider a budget bill.[13]  On May 19 the Senate and House adjourned until January 2022,[14] without having passed a budget bill for the 2022 fiscal year.  But the next day the legislature convened the special session called by Governor Dunleavy to consider a budget bill.[15]

On June 16 the legislature passed a budget bill to fund state government during the 2022 fiscal year.[16]  In a separate set of votes on matching the effective date to the beginning of the upcoming fiscal year, the Senate passed the budget bill by a two-thirds super-majority[17] but the House of Representatives did not,[18] making the budget

---

[11]  Alaska Const. art. III, § 16 (stating governor is "responsible for the faithful execution" of law and may "enforce compliance with any constitutional or legislative mandate" by "court action or proceeding brought in the name of the State," except that "[t]his authority shall not be construed to authorize any action or proceeding against the legislature").

[12]  2021 H. Journal 1; 2021 S. Journal 1.

[13]  Governor's Proclamation (May 13, 2021), 2021 H. Journal 1064-65, S. Journal 1206.

[14]  2021 H. Journal 1236; 2021 S. Journal 1206.

[15]  2021 H. Journal 1239; 2021 S. Journal 1211.

[16]  2021 H. Journal 1317; 2021 S. Journal 1289.

[17]  2021 S. Journal 1290.

[18]  2021 H. Journal 1317-18.

bill effective 90 days later (in mid-September). Alaska thus faced an imminent government shutdown at the beginning of the fiscal year.

The budget bill included a "retroactivity clause" making certain appropriations retroactive to just before the fiscal year's end. On June 16 the legislature's Director of Legal Services[19] advised the Speaker of the House that "the executive branch may choose to give effect to the retroactivity clause, and allow state government to continue operating before the bill takes effect 90 days later, knowing that the appropriations are retroactive to their intended effective dates." A day later the Department of Law, through Attorney General Taylor, provided a memo to Governor Dunleavy's office advising that "a retroactivity clause has no effect until the [budget] bill becomes law because an effective date clause operates independently from the date of retroactive application." The memo, relying on one of our previous decisions, asserted that "a law's effective date and its retroactive date are 'two distinctly different concepts[]' and that a retroactive law applies to conduct occurring before enactment of the law, but the legal effect produced by the law occurs only after the law's effective date."[20]

The executive and legislative branches prepared for a possible government shutdown. On June 17 the Department of Administration emailed all executive branch employees that "[a] partial shutdown could occur as a result of the

---

[19] Legal Services is a part of the Legislative Affairs Agency, the agency providing administrative services for the Alaska Legislative Council, the legislature's permanent interim committee and service agency. *See* AS 24.20.010, .061, .100.

[20] *See ARCO Alaska, Inc. v. State*, 824 P.2d 708, 710-11 (Alaska 1992) (holding that retroactivity provision of tax statute did not require super-majority vote under art. II, § 18 based on difference between law's effective date and retroactive application date).

Legislature failing to pass next year's annual budget with language providing an effective date of July 1, 2021."

The legislature adjourned the first special session on June 18.[21] That afternoon Governor Dunleavy issued an Executive Proclamation calling for a second special session to consider the budget bill, particularly including consideration of an effective date, set to begin June 23.[22] Later that afternoon the Legislative Affairs Agency emailed all legislators and legislative staff, with a copy to the Department of Administration, that "[i]t will likely be the Legislature's position that a functional budget was passed" and that "[b]ased on past practice and Legal Services interpretation, the retroactivity clause enables the work of the Legislature to continue, despite the House not passing the effective date clause."

Also on June 18 Governor Dunleavy sent a letter informing the then-Chief Justice of the Alaska Supreme Court that "[s]ome members of the Legislature" believed Governor Dunleavy could use "supplemental funding" to continue government operations but that he could not "go against the advice of [the] Attorney General and the clear constitutional language [of article II, section 18] to authorize and implement the [2022 fiscal year] budget." Governor Dunleavy said that he had "asked [the] Attorney General to seek a determination of the issue through the Alaska Court System" and requested that the Chief Justice "[p]lease address this issue in the most expedited way possible." The Chief Justice responded three days later by letter, with copies to the Senate President and the Speaker of the House, informing the Governor that a supreme court justice is "not allowed to engage in ex parte communications with any party to an impending legal action." (Emphasis in original.)

---

[21]     2021 H. Journal 1332; 2021 S. Journal 1297.

[22]     Governor's Proclamation (June 18, 2021), 2021 H. Journal 1336, 2021 S. Journal 1300.

Attorney General Taylor announced in a June 21 press release that he had just filed a lawsuit against the Legislative Affairs Agency seeking to resolve "a dispute between branches of government [about] whether the governor can, if the [budget] bill is enacted, spend money immediately despite [it] not taking effect until 90 days after enactment." The press release also attributed a statement to Governor Dunleavy:

> I agree with the Attorney General's decision to petition the court on this important matter . . . . We need the third branch of government to step in and resolve this dispute to ensure we all carry out our constitutional duties appropriately. I will not ignore the constitution. I, along with my legal team, believe the Legislature should not ignore the constitution. The Attorney General's actions are consistent with my goal of doing everything possible to avoid a government shutdown.

On June 23 the Legislative Affairs Agency sent the legislature's "appointing and budgetary authorities" an email requesting "direction for contingency planning purposes of a possible government shutdown should [the next] operating budget not be effective on or before June 30, 2021." The Legislative Affairs Agency proposed three options: (1) "Complete Shut Down" with "no legislative employees report[ing] to work on July 1 until a budget is passed"; (2) "Business as Usual" with the "Legislative Council [to] approve the use of existing capital funds to cover [fiscal year 2022] operating expenses" so that "all staff would remain working and eligible to be paid"; and (3) "Essential Services Only" with "staff [who] are essential to the budget process" to continue working and "nonessential" staff to "be placed in furlough status."

The legislature convened the second special session on June 23.[23] On June 28 a new House vote on the existing budget bill's effective date clause passed by a two-thirds super-majority, making the budget bill effective for the beginning of the

---

[23] 2021 H. Journal 1335-36; 2021 S. Journal 1299-1300.

July 1 fiscal year.[24] The legislature adjourned the second special session sine die that day.[25]

## C. Superior Court Proceedings

Attorney General Taylor's June 21 complaint against the Legislative Affairs Agency was accompanied by a summary judgment motion[26] and a request for expedited consideration. Attorney General Taylor asserted that AS 44.23.020(b)(1)[27] and (9)[28] provided his office "those powers and duties normally ascribed to it at common law" including "the ability 'to bring any action which [the attorney general] thinks necessary to protect the public interest.' " He sought judgment "[d]eclar[ing] unlawful any expenditure of state funds without an effective appropriation absent expenditure necessary to meet constitutional obligations to maintain the health and safety of residents or federal obligations."[29]

The Legislative Affairs Agency sought to dismiss the lawsuit for lack of subject matter jurisdiction, failure to state a claim upon which relief could be granted,

---

[24]    2021 H. Journal 1360-61.

[25]    2021 H. Journal 1367; 2021 S. Journal 1319.

[26]    *See* Alaska R. Civ. P. 56(c) (providing for entry of judgment if "there is no genuine issue as to any material fact and . . . any party is entitled to a judgment as a matter of law").

[27]    Alaska Statute 44.23.020(b)(1) provides that the attorney general shall "defend the Constitution of the State of Alaska and the Constitution of the United States of America."

[28]    Alaska Statute 44.23.020(b)(9) provides that the attorney general shall "perform all other duties required by law or which usually pertain to the office of attorney general in a state."

[29]    *See* AS 22.10.020(g) ("In case of an actual controversy in the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought.").

and failure to join an indispensable party (the legislature),[30] attaching numerous exhibits.[31] The Legislative Affairs Agency argued that article III, section 16 of the Alaska Constitution barred Attorney General Taylor's suit as an action brought "in the name of the State" and "against the legislature."[32] The Legislative Affairs Agency also opposed summary judgment and sought expedited consideration of its dismissal motion.

After the June 28 House super-majority vote approving the budget bill's fiscal year effective date, the superior court ordered the parties to "explain why the Court should not dismiss this case as moot."[33] Attorney General Taylor asked the court to consider the case under the public interest exception to the mootness doctrine.[34] The Legislative Affairs Agency countered that the exception should apply only to its article III, section 16 constitutional defense. The court allowed the case to proceed under the public interest exception to mootness.

The superior court granted summary judgment to the Legislative Affairs Agency and declared Attorney General Taylor's lawsuit unconstitutional under

---

[30] *See* Alaska R. Civ. P. 12(b)(1) (providing defense for lack of subject matter jurisdiction), (6) (providing defense for "failure to state a claim upon which relief can be granted"), and (7) (providing defense for failure to join necessary and indispensable party).

[31] *Cf.* Alaska R. Civ. P. 12(b) (providing court shall treat motion to dismiss for failure to state claim upon which relief can be granted as summary judgment motion if "matters outside the pleadings are presented to and not excluded by the court").

[32] *See supra* note 11.

[33] *See Alaska Cmty. Action on Toxics v. Hartig*, 321 P.3d 360, 366 (Alaska 2014) (noting courts generally refrain from deciding claims when events have rendered legal issues moot).

[34] *See Legis. Council v. Knowles*, 988 P.2d 604, 606 (Alaska 1999) (providing "public interest exception" applies to "issues whose importance and ability to evade review justify an immediate decision, despite technical mootness").

article III, section 16. The court found that the "pleadings and public statements belie[d] any assertion that this suit target[ed] the [Legislative Affairs Agency] only in its service-agency capacity." The court characterized the complaint as "seek[ing] a sweeping declaratory judgment" that "speaks of 'state funds' as a whole, and makes no mention of the [Legislative Affairs Agency]." Noting the public statements in Attorney General Taylor's press release and Governor Dunleavy's letter, the court viewed "the suit as a vehicle to resolve a dispute between the executive and legislative branches." Because the suit implicated the entire legislature, the court held that it "was brought 'against the legislature' for the purposes of [a]rticle III, [s]ection 16." Concluding that the suit was constitutionally barred, the court did not address the merits of Attorney General Taylor's claims or the Legislative Affairs Agency's alternative defenses.

The Legislative Affairs Agency sought attorney's fees under Alaska Civil Rule 82 as the prevailing party,[35] or, alternatively, under AS 09.60.010(c)(1) as a prevailing constitutional claimant.[36] The superior court denied attorney's fees under AS 09.60.010(c)(1) on the ground that the Legislative Affairs Agency was the defendant and not a claimant in the suit; the court awarded attorney's fees under Rule 82.

---

[35] Alaska R. Civ. P. 82(a) ("Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.").

[36] Alaska Statute 09.60.010(c)(1) provides in part:

> In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court . . . shall award . . . full reasonable attorney fees and costs to a claimant, who, as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or on appeal, has prevailed in asserting the right . . . .

### D. Appeal

Attorney General Taylor appeals, asking us to reverse the superior court's decision that his lawsuit was constitutionally barred, remand for further proceedings on the merits of his claim for declaratory relief under the public interest exception to mootness, and vacate the attorney's fees award because the Legislative Affairs Agency would no longer be a prevailing party and he otherwise is entitled to protection under AS 09.60.010(c)(2).[37]

## III. STANDARD OF REVIEW

"We review summary judgment rulings de novo."[38] We apply our independent judgment to determine mootness "because, as a matter of judicial policy, mootness is a question of law."[39] Constitutional questions "are questions of law to which we apply our independent judgment."[40]

---

[37] Alaska Statute 09.60.010(c)(2) provides in part:

> [The court] may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or appeal did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.

[38] *Wielechowski v. State*, 403 P.3d 1141, 1146 (Alaska 2017) (quoting *Seybert v. Alsworth*, 367 P.3d 32, 36 (Alaska 2016)).

[39] *Akpik v. State, Off. of Mgmt. & Budget*, 115 P.3d 532, 534 (Alaska 2005) (quoting *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001)).

[40] *Wielechowski*, 403 P.3d at 1146.

"We review de novo whether the trial court applied the law correctly in awarding attorney's fees."[41] "Interpretation of the constitutional litigant exception to attorney's fees is a question of law, which we review using our independent judgment."[42]

## IV. DISCUSSION

### A. The Public Interest Exception To The Mootness Doctrine Applies To Whether Article III, Section 16 Bars The Attorney General's Suit.

A week after Attorney General Taylor filed his lawsuit the legislature established the effective date for the next fiscal year's budget bill as of the beginning of the fiscal year. Whether the Legislative Affairs Agency could expend funds as of the new fiscal year thus became a moot question. But the "long recognized" public interest exception allows courts to adjudicate "issues whose importance and ability to evade review justify an immediate decision, despite technical mootness."[43] Courts consider three factors when determining whether to apply the public interest exception:

> 1) whether the disputed issues are capable of repetition, 2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues and, 3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.[44]

In *Legislative Council v. Knowles* we applied the public interest exception to a moot dispute concerning article III, section 16 when the governor, acting in an

---

**41** *Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 535 (Alaska 2015) (quoting *Lake & Peninsula Borough Assembly v. Oberlatz*, 329 P.3d 214, 221 (Alaska 2014)).

**42** *Manning v. State, Dep't of Fish & Game*, 420 P.3d 1270, 1278 (Alaska 2018).

**43** *Legis. Council v. Knowles*, 988 P.2d 604, 606 (Alaska 1999).

**44** *Id.* (quoting *State, Dep't of Health & Soc. Servs. v. Alaska State Hosp. & Nursing Home Ass'n*, 856 P.2d 755, 766 (Alaska 1993)).

official capacity, sued the Legislative Council.[45] Relying on *Knowles*, the superior court in this case applied the public interest exception to reach the question whether article III, section 16 barred Attorney General Taylor's suit against the Legislative Affairs Agency. We agree with the superior court that the exception should apply to this question.

Consistent with our reasoning in *Knowles*, the first and third factors favor the exception in this case. Considering the high likelihood of future budget disputes between the legislative and executive branches, the constitutional question whether an attorney general may sue the legislature to prevent legislative expenditures is capable of repetition.[46] And whether a suit violates article III, section 16 is "unquestionably an issue of great public importance, for it goes to the heart of the delicate constitutional balance between the powers of two coordinate branches of government."[47] The factual context of this case — involving the threat of a potential government shutdown — further heightens the public interest in overriding the mootness doctrine.

*Knowles* also guides our analysis of the second factor, weighing in favor of an exception.[48] A dispute concerning a budget bill's effective date conceivably could arise again and be decided before being mooted. We generally expedite adjudication of time-sensitive issues of statewide importance, including constitutional disputes.[49]

---

[45] *Id.* at 605-07.

[46] *Id.* at 606.

[47] *Cf. id.* at 607 (concluding article III, section 16 presented important issue of public interest).

[48] *Cf. id.* (concluding that mootness repeatedly would circumvent review of violation of article III, section 16).

[49] *See, e.g.*, *Kohlhaas v. State*, 518 P.3d 1095, 1100 (Alaska 2022) (explaining reasoning for previous summary order of expedited appeal of ranked-choice voting ballot initiative); *Young v. State*, 502 P.3d 964, 970 (Alaska 2022) ("[D]eadlines of the initiative process are not inherently so restrictive as to thwart judicial review,

Yet *Knowles* clarified that, in the context of article III, section 16, the presence of the second factor turns principally on the timing of the "express harm that the constitution protects against."[50] When the governor sues the legislature in violation of article III, section 16, the harm "occurs when the action is brought, not when it is concluded."[51] Because article III, section 16 implicates an immediate harm, applying the mootness doctrine would repeatedly circumvent review of the issue.

We thus conclude that whether article III, section 16 applies to Attorney General Taylor's suit justifies consideration despite the underlying issues being moot.

## B. Article III, Section 16 Bars The Attorney General's Suit.

### 1. Constitutional framework and precedent

Our analysis of article III, section 16 follows the established "framework for interpreting the Alaska Constitution."[52] Constitutional provisions are given "a reasonable and practical interpretation in accordance with common sense, based upon the plain meaning and purpose of the provision and the intent of the framers."[53] We

---

especially given our courts' practice of dealing with elections issues expeditiously."); *State v. Arctic Vill. Council*, 495 P.3d 313, 319 (Alaska 2021) (explaining reasoning for previous summary order issued after hearing expedited oral arguments "that same day"); *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 778 (Alaska 2001) (denying public interest exception to appeal of initiative proposal because, "[a]lthough such appeals typically must be decided by election day to avoid becoming moot, there is no reason to believe that we cannot resolve such appeals in a timely fashion"); *McAlpine v. Univ. of Alaska*, 762 P.2d 81, 82 (Alaska 1988) (reviewing expedited appeal challenging referendum under article XI, section 7).

[50] *Knowles*, 988 P.2d at 607.

[51] *Id.*

[52] *Wielechowski v. State*, 403 P.3d 1141, 1146 (Alaska 2017); *see also State v. Alaska Legis. Council*, 515 P.3d 117, 123-24 (Alaska 2022).

[53] *Alaska Legis. Council*, 515 P.3d at 123 (quoting *Alaska Legis. Council v. Knowles*, 21 P.3d 367, 370 (Alaska 2001)).

then adopt the "rule of law that is most persuasive in light of precedent, reason, and policy."[54]

A governor is authorized to sue in the "name of the State" but is barred "from turning this power against the legislature."[55]  Article III, section 16 provides:

> The governor shall be responsible for the faithful execution of the laws.  He may, by appropriate court action or proceeding brought in the name of the State, enforce compliance with any constitutional or legislative mandate, or restrain violation of any constitutional or legislative power, duty, or right by any officer, department, or agency of the State or any of its political subdivisions.  This authority shall not be construed to authorize any action or proceeding against the legislature.

In *Knowles* the governor sued the Legislative Council to challenge the timeliness of the legislature's veto-override vote.[56]  "Using substance rather than form as a measure of constitutional compliance," we held that article III, section 16 barred the governor's suit.[57]  The superior court in this case applied *Knowles* to conclude that Attorney General Taylor's suit seeking declaratory judgment was similarly an action " 'in the name of the State' directed 'against the legislature.' "

### 2.    The parties' arguments

Attorney General Taylor disputes the superior court's characterization of his suit on two grounds.  He first claims common law authority to sue on the State's behalf distinct from the governor's constitutional authority under article III, section 16.  He next argues that *Knowles* allows him to challenge non-legislative acts, including the

---

[54]    *Wielechowski*, 403 P.3d at 1146 (quoting *State v. Ketchikan Gateway Borough*, 366 P.3d 86, 90 (Alaska 2016)).

[55]    *Knowles*, 988 P.2d at 607.

[56]    *Id.* at 605.

[57]    *Id.* at 608.

Legislative Affairs Agency's "service-related acts."[58]  Attorney General Taylor asserts that his suit avoids targeting a legislative act because the decision to spend money on the legislature's administrative services is a purely administrative act.  The Legislative Affairs Agency, on the other hand, urges us to affirm the superior court's application of *Knowles*.  In the Legislative Affairs Agency's view, an attorney general "in substance" has the same authority article III, section 16 grants a governor.  And the Legislative Affairs Agency points to Attorney General Taylor's and Governor Dunleavy's statements indicating that the suit targeted the legislature as a whole, not just non-legislative acts.

### 3.  Question of common law authority to sue to enforce constitutional mandates

The attorney general is the "principal executive officer" of the Department of Law,[59] which is one of 16 statutorily created departments within the executive branch[60] falling under the governor's constitutional authority.[61]  The attorney general

---

[58]  *Cf. id.* at 609 ("More significant is that the complaints assert no particular service-related acts or functions as a basis for proceeding against the [Legislative Council] or its individual legislator-members.").

[59]  AS 44.23.010.

[60]  *See* AS 44.17.005 (listing principal offices and departments in executive branch).

[61]  Article III, § 25 of the Alaska Constitution provides:

> The head of each principal department shall be a single executive unless otherwise provided by law.  He shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session, and shall serve at the pleasure of the governor, except as otherwise provided in this article with respect to the secretary of state.  The heads of all principal departments shall be citizens of the United States.

"is the legal advisor of the governor and other state officers"[62] and is authorized to "perform all other duties required by law or which usually pertain to the office of attorney general in a state."[63] We have interpreted this statute as granting the attorney general "those powers which existed at common law except where they are *limited by statute or conferred upon some other state official*."[64] "Under the common law, an attorney general is empowered to bring any action [thought] necessary to protect the public interest."[65] Attorney General Taylor asserts that no other State commissioner-level office is empowered to bring lawsuits in the public interest. But that seems a fine hair to split.

As noted, a governor is the head of the executive branch and department heads are appointed by, serve at the pleasure of, and act under the authority of the governor.[66] It is commonplace that department heads, often titled commissioners, will have specific statutory authority to bring court actions, in the public interest, to enforce laws within their purview. For example, the Department of Labor and Workforce Development (the department) may "institute court proceedings against an employer"[67] to collect monies due employees and may "initiate actions for penalties" to enforce employment laws.[68] And in the wage and hour arena governed by an express legislative

---

[62] AS 44.23.020(a).

[63] AS 44.23.020(b)(9).

[64] *Pub. Def. Agency v. Superior Ct., Third Jud. Dist.*, 534 P.2d 947, 950 (Alaska 1975) (emphasis added).

[65] *Id.*

[66] *See supra* note 61.

[67] AS 23.05.060(4).

[68] AS 23.05.190; *see also* AS 23.05.210 (authorizing attorney general to prosecute civil cases referred by department).

statement of public policy,[69] the department's commissioner is authorized to "bring an action in a competent court" to enforce wage and hour statutes.[70] In the unemployment insurance arena governed by an express legislative statement of public policy,[71] "the department, through the attorney general, may bring an action in superior court" to enforce unemployment insurance laws.[72] At the end of the day, the authority of an unelected attorney general to represent the State derives from the governor's constitutionally inherent executive branch authority, and further legislatively created executive branch authority, to bring actions on behalf of the State.[73] An attorney general has no authority independent of the governor's executive branch authority.

Attorney General Taylor nonetheless contends that an attorney general has "authority to act in a narrower capacity" than a governor. Yet he also asserts that the superior court "failed to consider the *breadth* of the statutory authority granted to the attorney general." (Emphasis added.) In short, Attorney General Taylor attempts to make a fine distinction between having enough authority to "file suit to protect the public interest" but not having so much authority that he is, in substance, bringing a lawsuit "in the name of the State" under the Alaska Constitution.

We conclude that a suit to enforce the effective bill date clause of the Alaska Constitution putatively brought under AS 44.23.020(b)(9) is substantively

---

[69]     AS 23.10.050.

[70]     AS 23.10.115.

[71]     AS 23.20.005-.010.

[72]     AS 23.20.248(a).

[73]     Alaska Const. art. III, § 16 (providing that governor "may, by appropriate court action or proceeding brought in the name of the State, enforce compliance with any constitutional or legislative mandate, or restrain violation of any constitutional or legislative power, duty, or right by any officer, department, or agency of the State or any of its political subdivisions" with limited exception against suing legislature).

indistinguishable from a suit brought under the governor's article III, section 16 executive branch authority to enforce constitutional mandates.  Again, an unelected attorney general — appointed by the governor as head of an executive branch department — serves at the pleasure and direction of the governor.[74]  We previously have held that an attorney general's discretion to determine "what is or is not in the public interest" is always "subject to constitutional bounds."[75]  The bounds of article III, section 16 are clear:  suits "in the name of the State . . . . against the legislature" are barred.[76]  In this context an attorney general's common law authority to sue on the State's behalf to enforce a constitutional mandate is not distinct from a governor's constitutional authority to sue on the State's behalf (through an attorney general).  A suit brought by an attorney general against the legislature therefore is analyzed under our article III, section 16 jurisprudence.

Although article III, section 16's history is sparse, the founders' goal of a "strong executive" aligns with our understanding of an attorney general's authority.[77] Delegate Victor Rivers, Chairman of the Constitutional Convention's Committee on the

---

[74]     *See supra* note 61.

[75]     *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 426 (Alaska 1982).

[76]     Alaska Const. art. III, § 16.

[77]     *See State v. Recall Dunleavy*, 491 P.3d 343, 365 (Alaska 2021) ("Alaska's constitutional convention delegates intended to 'create a strong executive branch with "a strong control on the purse strings" of the state.' " (quoting *Alaska Legis. Council v. Knowles*, 21 P.3d 367, 372 (Alaska 2001))); *Legis. Council v. Knowles*, 988 P.2d 604, 609 (Alaska 1999) ("We readily acknowledge the legitimacy of the governor's expressed interest in preserving the broad powers of litigation 'that, in essence, makes him the strong executive that the framers intended.' "); *Bradner v. Hammond*, 553 P.2d 1, 3 n.3 (Alaska 1976) ("There is no dispute that our constitution was designed with a strong executive in mind.").

Executive Branch, provided the delegates a brief description of article III, section 16. He explained:

> [T]o enforce the strong executive and to bulwark his power we have given him power by appropriate actions or proceedings in the court, brought in the name of the state, to enforce compliance with any constitution[al] or legislative mandate. That is specifically written into the constitution because we want to have a broad interpretation of the powers of the strong executive. He has no authority however to act in that manner in any proceeding against the legislature. The legislature is the supreme elected body and as such he is answerable to them and to their interpretations and handling of matters of law.[78]

The delegates rejected two amendments designed to increase an attorney general's independent authority. The first amendment proposed making the attorney general position subject to statewide election.[79] Because that amendment failed,[80] the governor and lieutenant governor are the only statewide elected offices.[81] The second amendment proposed selecting an attorney general through judicial council nomination, governor appointment, and legislative confirmation during appointment and removal.[82] Because that amendment failed,[83] the governor selects the attorney general under the same appointment procedures as other department heads.[84] These failed amendments reflect the predominate view that a "strong executive" needed an attorney general

---

[78] 3 Proceedings of the Alaska Constitutional Convention (PACC) 1986 (January 13, 1956).

[79] 3 PACC 2193 (January 14, 1956).

[80] 3 PACC 2200 (January 14, 1956).

[81] Alaska Const. art. III, § 3, § 8.

[82] 3 PACC 2215 (January 16, 1956).

[83] 3 PACC 2225-26 (January 16, 1956).

[84] Alaska Const. art. III, § 25.

whose interests would align exclusively with the executive branch.[85]  Attorney General Taylor's argument for common law authority "not dependent on the governor's consent" would violate this structure.

Attorney General Taylor's suit is an "action or proceeding brought in the name of the State [to] enforce compliance with . . . [a] constitutional . . . mandate, or restrain violation of [a] constitutional . . . power."[86]  Because the common law authority to sue invoked by Attorney General Taylor is not distinct from the governor's constitutional authority to sue through the attorney general, we must apply constitutional limitations to the suit as if it were brought in Governor Dunleavy's name.

### 4.    Applying *Knowles* to Attorney General Taylor's suit

In *Knowles* we did not foreclose executive branch suits against the legislature for non-legislative acts.  In *Knowles* the governor had sued the Legislative Council over the legislature's veto-override vote; we noted that the vote was a "purely legislative act" and that the governor had "assert[ed] no particular *service-related acts* or functions as a basis for proceeding against the Council or its individual legislator-members."[87]  *Knowles* thus left open the possibility that, had the governor asserted "service-related acts," article III, section 16 might not have barred a suit about those acts.[88]  While we acknowledge the narrow space *Knowles* left for executive branch suits challenging non-legislative acts, we see no reason to draw lines in this very clear case.

---

[85]     3 PACC 1986 (January 13, 1956).

[86]     Alaska Const. art. III, § 16.

[87]     *Legis. Council v. Knowles*, 988 P.2d 604, 605-06, 609 (Alaska 1999) (emphasis added) (explaining that, by challenging legislature's veto-override vote, lawsuit "aim[ed] beyond the [Legislative] Council, targeting an act of the legislature that is purely and quintessentially legislative").

[88]     *Id.* at 609.

"To determine whether an action or proceeding is brought to enforce compliance with a constitutional provision or restrain violation of a constitutional power in violation of article III, section 16, we must consider the practical goal of the action rather than the procedural path it employs to attain that goal."[89] This analysis requires "[u]sing substance rather than form as a measure of constitutional compliance."[90] In *Knowles* we considered only the governor's pleadings to determine the substance of his suit.[91] But we also may consider a government official's public statements about a suit's purpose to determine whether it violates article III, section 16. Considering the pleadings and contemporaneous public statements from Governor Dunleavy and Attorney General Taylor, we conclude that the suit targeted the legislature and was intended to influence budget legislation rather than to correct an administrative act.

The day Attorney General Taylor filed suit, his office issued a press release titled "Attorney General Seeks Court Decision on the *Failure of the Effective Date in the Budget Bill*." (Emphasis added.) The press release quoted Attorney General Taylor as explaining: "When there is a dispute between branches of government, we need the courts to step in." According to the press release, Governor Dunleavy similarly spoke to "need[ing] the third branch of government to step in and resolve this dispute." The suit clearly sought to resolve a constitutional dispute between the legislative and executive branches of government. "Because the suit test[ed] the basic constitutional

---

[89] *Id.* at 608.

[90] *Id.*

[91] *Id.* at 608-09.

structure of Alaska's tripartite system of government," it aimed beyond the Legislative Affairs Agency's personnel planning decisions, thus targeting the legislature.[92]

Governor Dunleavy also made other statements indicating that the suit was intended to spur action on budget legislation by assigning responsibility to the legislature for a potential government shutdown. The press release quoted Governor Dunleavy: "I, along with my legal team, believe the *Legislature* should not ignore the constitution. The Attorney General's actions are consistent with *my goal of doing everything possible to avoid a government shutdown.*" (Emphasis added.) And in Governor Dunleavy's letter to the Chief Justice, he wrote:

> Because of the significant and serious consequences flowing from the lack of an effective date [in the budget bill], I have asked my Attorney General to seek a determination of the issue through the Alaska Court System.
>
> Please address this issue in the most expedited way possible. Alaskans need, and deserve, a budget that meets constitutional requirements.

Governor Dunleavy's and Attorney General Taylor's statements associating a potential government shutdown with the legislature's initial failed vote on the effective date clause in the budget bill exposes that the suit was meant to change the legislature's position in its ongoing budget discussions.[93] Article III, section 16 prohibits the

---

[92] *Cf. id.* at 608 (reasoning that governor's suit was brought in name of state "[b]ecause the suit tests the basic constitutional structure of Alaska's tripartite system of government, [and] it necessarily involves a matter of general public importance — one that transcends the executive branch's parochial interests and implicates interests common to all Alaska citizens").

[93] Attorney General Taylor's pleadings also belie any assertion that the suit targeted the Legislative Affairs Agency's "service-related acts" rather than the legislature as a whole. In the complaint he sought a judgment declaring unlawful "any expenditure of state funds without an effective appropriation." Such relief would have prohibited expenditures for all State agencies, not just the Legislative Affairs Agency.

executive branch from suing the legislature with the "practical goal" of influencing legislative decision-making.  Put another way, a suit crosses constitutional bounds if it is clear that its purpose is affecting legislative policy choices on pending matters.

By bringing an action to influence a purely legislative act, Attorney General Taylor sought "to hold the legislature itself 'answerable' to [the governor] for its 'interpretations and handling of matters of law.' "[94]  As in *Knowles*, "[t]he substance of this suit thus infringes upon the legislature's constitutional domain in precisely the manner that the Constitution's drafters intended to prohibit."[95]  Because article III, section 16 bars Attorney General Taylor's suit, we do not reach the suit's merits.

### C.    We Remand The Attorney's Fees Award For Further Proceedings.

Alaska Civil Rule 82 provides a default structure for attorney's fees awards to prevailing parties in the trial courts.[96]  But AS 09.60.010(c) and (d) provide exceptions that may override, in whole or in part, the application of Rule 82.  First, subsections .010(c)(1) and .010(d)(1)-(2) provide that a prevailing party — "as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action" — may obtain an award of full reasonable attorney's fees devoted to constitutional claims upon which the party prevailed so long as the party did not have sufficient economic incentive to bring the claims regardless of their constitutional nature.[97]  Second, subsection .010(c)(2) provides that a party — "as a plaintiff, counterclaimant, cross claimant, or

---

By seeking relief beyond the legislature's own expenditures, Attorney General Taylor failed to limit his complaint to the Legislative Affairs Agency's non-legislative acts.

[94]     *Knowles*, 988 P.2d at 609 (quoting 3 PACC 1986 (January 13, 1956)).

[95]     *Id.*

[96]     *See* Alaska R. Civ. P. 82(a) ("Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.").

[97]     AS 09.60.010(c)(1), (d)(1)-(2).

third-party plaintiff in the action" — who brings but does not prevail on a constitutional claim may be protected from an adverse award of attorney's fees so long as the constitutional claim was not frivolous and the party did not have sufficient economic incentive to bring the claim regardless of its constitutional nature.[98]

The Legislative Affairs Agency moved for an attorney's fees award after the superior court granted summary judgment dismissing the suit. The Legislative Affairs Agency asserted that it was a prevailing constitutional claimant entitled to recover full reasonable fees against Attorney General Taylor under AS 09.60.010(c)(1) and that Attorney General Taylor was not a non-prevailing constitutional claimant entitled to protection under AS 09.60.010(c)(2). It alternatively requested an award under Rule 82.

Attorney General Taylor responded that the Legislative Affairs Agency was not a constitutional claimant because, rather than being a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff in the suit, as required by AS 09.60.010(c)(1), it had been a defendant. And Attorney General Taylor asserted that he was a constitutional claimant entitled to protection under AS 09.60.010(c)(2) because he had sought declaratory judgment that, under article II, section 18 of the Alaska Constitution, "state agencies — including the [Legislative Affairs Agency] — were not authorized to expend state funds appropriated in the . . . operating budget before the effective date of that law." Finally, Attorney General Taylor asserted that awarding attorney's fees in a dispute between two government branches was pointless because the funds ultimately would come from the State treasury.

---

[98] AS 09.60.010(c)(2); *see generally Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 279-86 (Alaska 2015) (explaining that legislature abrogated and replaced common law public interest litigant exception to Rule 82 by enacting statutory constitutional claimant provision under AS 09.60.010).

The superior court ruled that the Legislative Affairs Agency could not recover attorney's fees under AS 09.60.010(c)(1) because it was not a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff in the action as required by the statute. The court then stated that it did not need to determine whether Attorney General Taylor was a constitutional claimant entitled to protection under AS 09.60.010(c)(2) because it was not awarding the Legislative Affairs Agency attorney's fees under AS 09.60.010(c)(1). The court ruled that the Legislative Affairs Agency was entitled to an attorney's fees award under Rule 82, rejecting Attorney General Taylor's argument that an award would be "pointless" by explaining that "[e]ach arm of the government has its own budget and must account for all transactions, including attorney['s] fees for litigation." The court awarded nearly $15,000 in attorney's fees under Rule 82(b)(2)'s 20% schedule.

Attorney General Taylor appeals the attorney's fees award, arguing that he is a constitutional claimant entitled to protection under AS 09.60.010(c)(2) and that it is "an exercise in futility" and "a wasteful bureaucratic accounting exercise" resulting in moving state money "around on paper between one government agency and another." The Legislative Affairs Agency did not bring a cross-appeal and does not otherwise argue that the superior court erred by declining to award attorney's fees under AS 09.60.010(c)(1); the Legislative Affairs Agency argues only that the Rule 82 attorney's fees award should be affirmed because the Attorney General did not establish in the superior court that he met all the requirements to be a constitutional claimant protected by AS 09.60.010(c)(2).

Although we reject Attorney General Taylor's public policy argument that courts should not award attorney's fees in disputes between different branches or agencies of government, for the reasons set forth by the superior court when it rejected that argument, we do not need to detail or otherwise resolve the competing arguments. It was error to deny Attorney General Taylor protection under AS 09.60.010(c)(2) *solely because* the court did not award attorney's fees to the Legislative Affairs Agency

under AS 09.60.010(c)(1).  A qualified constitutional claimant is entitled to protection under AS 09.60.010(c)(2) against an attorney's fees award under Rule 82.[99]

We therefore remand to the superior court for further proceedings to determine whether the attorney's fees award should stand.  We take no position on whether an attorney general or any other state agency can be a constitutional claimant.  If Attorney General Taylor seeks AS 09.60.010(c)(2)'s protection against an attorney's fees award, he must establish to the superior court's satisfaction that he meets the requirements of the statute.  If Attorney General Taylor is successful, then the parties may have to engage in an allocation analysis to determine the fees, if any, incurred by the Legislative Affairs Agency solely on non-constitutional claims and thus not necessarily affected by AS 09.60.010(c)(2).[100]

---

[99] *See, e.g.*, *DeVilbiss v. Matanuska-Susitna Borough*, 356 P.3d 290, 298–99 (Alaska 2015) ("Under Alaska Civil Rule 82(b)(2) . . . the prevailing party is entitled to [a percentage of] its actual attorney's fees which were necessarily incurred.  But AS 09.60.010 shields non-prevailing litigants from attorney's fee awards associated with non-frivolous constitutional claims, so long as the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved." (footnotes omitted)); *see also Meyer v. Stand for Salmon*, 450 P.3d 689, 692-93 (Alaska 2019) (Winfree, J., concurring) (explaining that AS 09.60.010 requires both prevailing and non-prevailing claimants and defendants to distinguish between constitutional and non-constitutional claims).  *Compare* Alaska R. Civ. P. 82(a) (providing for attorney's fees award to prevailing party "[e]xcept as otherwise provided by law"), *with* AS 09.60.010(c)(2) (providing court "may not order a claimant to pay the attorney fees of the opposing party" if claimant asserted constitutional right, but "did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action").

[100] AS 09.60.010(d)(1) (providing that court may award prevailing party only those fees devoted to constitutional claims upon which it prevailed); *Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 539 (Alaska 2015) ("Rule 82 attorney['s] fees may be awarded only for work that would not have been necessary but for a non-constitutional claim; AS 09.60.010(c)(2) applies to work in which a constitutional claim

## V.   CONCLUSION

Attorney General Taylor's suit was an action brought "in the name of the State . . . . against the legislature" forbidden by article III, section 16 of the Alaska Constitution.  We thus AFFIRM the superior court's order granting summary judgment to the Legislative Affairs Agency and dismissing the suit.  But we VACATE the superior court's attorney's fees award and REMAND that issue for further proceedings.

---

is implicated in any way." (alteration in original) (quoting *Lake & Peninsula Borough v. Oberlatz*, 329 P.3d 214, 228 (Alaska 2014))); *Meyer*, 450 P.3d at 692 (Winfree, J., concurring) (providing that AS 09.60.010(c)(2) "applies to claims, which must be analyzed separately, and that a court may not 'simply characterize all the claims as primarily constitutional or primarily non-constitutional' " (quoting *Oberlatz*, 329 P.3d at 227)).